LAWRENCE ET AL., APPELLANTS, *v.* EDWIN SHAW HOSPITAL, APPELLEE.

(No. 86AP-69—Decided September 25, 1986.)

*George E. Lord,* for appellants.
*Lynn C. Slaby,* prosecuting attorney, and *Donna J. Carr,* for appellee.

REILLY, J. Appellants, James Lawrence, Kathy Essik and Bobby Jett, were classified civil service employees of the Edwin Shaw Hospital, a county hospital in Summit County, prior to October 4, 1984. Effective on October 4, 1984, R.C. 124.11(A)(20) was amended to place county hospital employees appointed under R.C. 339.03 and 339.06 into the unclassified civil service. Appellants were laid off in July 1985 when the treatment center where they worked was closed.

They appealed their layoffs to the State Personnel Board of Review. The board ruled that it lacked jurisdiction to hear the layoff appeals as appellants were unclassified civil service employees. The court of common pleas affirmed the decision of the board of review.

Appellants advance the following assignments of error:

"I. The common pleas court erred in its finding that the Personnel Board of Review's decision was in accordance with law because R.C. 124.11(A)(20) amounts to an unconstitutional taking of appellant's property without compensation.

"II. The common pleas court erred in finding that the Personnel Board of Review's decision was in accordance with law because R.C. 124.11(A)(20) amounts to an unconstitutional impairment of appellant's contract rights.

"III. The common pleas court erred in finding that the Personnel Board of Review's decision was in accordance with law because reliance on R.C. 124.11(A)(20) amounts to a retroactive application of a statute to appellant's damage and is therefore unconstitutional.

"IV. The common pleas court erred in finding that the Personnel Board of Review's decision was in accordance with law because R.C. 124.11(A)(20) violates the Due Process and Equal Protection guarantees of the Ohio and U.S. Constitutions."

In the first assignment of error, appellants contend that R.C. 124.11 (A)(20) amounts to an unconstitutional taking of appellants' property without just compensation. The Fifth Amendment provides that, "* * * nor shall private property be taken for public use without just compensation." The Fourteenth Amendment has incor-

porated this clause and thus it is made applicable to the states. See *Chicago B. & Q. RR. Co.* v. *Chicago* (1897), 166 U.S. 226. See, also, Section 19, Article I, Ohio Constitution. Whenever it has been established that there has been a taking of private property for "public use," the owner is entitled to compensation for property actually taken and damage for injury to the property which remains after the taking. *Norwood* v. *Forest Converting Co.* (1984), 16 Ohio App. 3d 411, 16 OBR 481, 476 N.E. 2d 695. The question before this court is whether a legislative amendment which removed appellants from the classified civil service constituted a taking of property for a public use within the purview of the Fourteenth Amendment.

In this case, R.C. 124.11, prior to its amendment, conferred upon appellants a "property interest" in continued public employment as classified civil servants. See *Cleveland Bd. of Edn.* v. *Loudermill* (1985), 470 U.S. 532. Based upon this "property interest," adverse administrative acts could not be taken against appellants as classified employees without their first being afforded prior notice and an opportunity to respond. However, it does not necessarily follow that, because appellants were entitled to due process protection while classified employees, the amendment which unclassified appellants constituted a taking of private property within the scope of the Fourteenth Amendment.

The United States Supreme Court stated in *Penn Central Transp. Co.* v. *New York* (1978), 438 U.S. 104, 124, that: "* * * [a] 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government, * * * than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." The

court further noted that: "* * * this Court has accordingly recognized, in a wide variety of contexts, that government may execute laws or programs that adversely affect recognized economic values. * * *" *Id.*

Although appellants are no longer entitled to receive those benefits and protections they previously enjoyed as classified employees, the legislative amendment to R.C. 124.11 nevertheless was not a taking of property within the scope of the Fourteenth Amendment.

The Ohio Supreme Court has defined a taking of property as "* * * any substantial interference with the elemental rights growing out of ownership of private property * * *." *Smith* v. *Erie Rd. Co.* (1938), 134 Ohio St. 135, 142, 11 O.O. 571, 574, 16 N.E. 2d 310, 313. A substantial interference with the right of the use, control, exclusion, or disposition of an owner's property may result in a "taking" problem.

The "taking clause" has never been applied by Ohio courts to the circumstances in this case. Appellants had no ownership of property in the statutory benefits and protection provided them while classified civil service employees within the scope of the "taking clause" as incorporated by the Fourteenth Amendment or under Section 19, Article I, of the Ohio Constitution. Consequently, there was no unconstitutional taking of property for a public use. Rather, the Ohio General Assembly properly exercised its legislative authority to amend an existing statute.

Therefore, appellants' first assignment of error is not well-taken.

In the second assignment of error, appellants assert that the amendment, R.C. 124.11(A)(20), violates Section 28, Article II, of the United States Constitution because the amendment impairs appellants' contractual rights.

While appellants' argument is somewhat ambiguous, their position could either be based upon the premise that R.C. 124.11 itself conferred contractual rights upon appellants which could not subsequently be impaired by the amended statute; or that the amended statute impaired the obligations of a pre-existing employment contract between appellants and Edwin Shaw Hospital. It is noteworthy that the parties agreed that no express written employment contract existed between appellants and Edwin Shaw Hospital.

As a basic proposition, the rights conferred by statute are not contractual by their nature and consequently do not preclude subsequent modification or abrogation. The United States Supreme Court in *National RR. Pass. Corp.* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1985), 470 U.S. 451, 465-466, stated that:

"* * * For many decades, this Court has maintained that absent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.' * * *"

The court further noted that it is:

"* * * [A] well-established presumption * * * that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state. * * * Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body. * * *" *Id.* at 466.

Further, the Supreme Court has also held that the party who asserts that a state law created contractual rights has the burden of overcoming the presumption that a contract does not arise out of a legislative enactment. As the court stated in *Dodge* v. *Bd. of Edn. of Chicago* (1937), 302 U.S. 74, 78: "In determining whether a law tenders a contract to a citizen it is of first importance to examine the language of the statute. * * * "

Accordingly, an examination of the language of R.C. 124.11 must be considered to determine whether, prior to its amendment, R.C. 124.11 conferred upon appellants contractual rights which could not be subsequently impaired. The obligations of a contract are impaired where a law substantially invalidates, releases, or extinguishes the obligations of a contract or diminishes substantial contractual rights in favor of one party against another. See *Home Building & Loan Assn.* v. *Blaisdell* (1934), 290 U.S. 398.

An examination of R.C. 124.11 shows that those public employees not specifically delineated as unclassified employees under R.C. 124.11(A) were to be placed in the classified service as set forth in R.C. 124.11(B). As classified civil service employees, appellants were entitled to retain their positions "during good behavior and efficient service," and could not be dismissed "except * * * [for] misfeasance, malfeasance, or nonfeasance in office." R.C. 124.34. Furthermore, appellants were entitled to the minimum due process requirements of notice and an opportunity to respond prior to adverse administrative action. *Cleveland Bd. of Edn.* v. *Loudermill, supra,* at 546.

While appellants were afforded the above-stated statutory benefits and protections, and procedural due process as classified public employees, these benefits nevertheless were not contractual rights. R.C. 124.11 does not include any language which would lead to a conclusion that appellants obtained contractual rights pursuant to this statute which could not be impaired by the subsequent legislative

amendment. However, appellants have not shown nor does this court find that the purpose or language of R.C. 124.11 created any contractual rights between the state and appellants.

Appellants have also failed to present any evidence to support their assertion that the appellants had an employment contract with Edwin Shaw Hospital. Since appellants have not demonstrated that any written or oral contract of employment existed between appellants and Edwin Shaw Hospital, the amended statute could not have impaired the obligations of any alleged contract between the parties as none was shown to exist.

Accordingly, appellants' second assignment of error is not well-taken.

Appellants contend in the third and fourth assignments of error that the board's reliance on R.C. 124.11 (A)(20) was a retroactive application of the statute as well as a violation of appellants' due process guarantees under the Ohio and United States Constitutions. For the purpose of discussion, appellants' contention that their right of due process was violated will be considered first.

Appellants emphasize *Loudermill, supra,* to support their claim that their individual rights of due process were violated. In *Loudermill,* a classified civil service employee was dismissed from his position without notice or a prior opportunity to respond to charges made against him. The court noted that a property interest is not created by the Constitution but is derived from an independent source, such as state law. The parties agreed that there were property rights in continued employment under R.C. 124.11 which entitled classified civil service employees to retain their positions "during good behavior and efficient service."

The issue before the court in *Loudermill* was whether the legisla-ture, which conferred the property interest in public employment, could also define the procedures to be fulfilled to protect such an interest. The court concluded that all the process due under the Ohio statutes was "* * * a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the Ohio statute. * * *" *Loudermill, supra,* at 547-548.

This case is distinguishable on the facts from *Loudermill.* It does not involve a situation where public employees were laid off or dismissed while still employed as classified civil service employees. Appellants were unclassified at the time of their layoffs. In sum, appellants were not laid off prior to the amendment of the statute where the failure to provide notice and an opportunity to respond as set forth in *Loudermill* would have violated Ohio statutes and their constitutional guarantee of due process.

Appellants' property interest was derived from the statutory protections and benefits of R.C. Chapter 124. This "property interest" only existed for as long as appellants were included under the classified civil service. Thus, at the time of the layoffs, appellants no longer had a property interest in continued public employment and, therefore, no due process rights attached. Consequently, appellant's due process argument is not well-taken.

Appellants' in their third assignment of error assert that the board's reliance on R.C. 124.11(A)(20) was a retroactive application of the statute. Appellants' reliance upon the *Loudermill* decision to support the proposition that the General Assembly enacted a retroactive law is misplaced. The issue of whether there was a retroactive application of the statute was not before the court in that case.

The Ohio Supreme Court in *Rairden* v. *Holden* (1864), 15 Ohio St.

207, at 210, quoting Justice Story in *The Society* v. *Wheeler* (1814), 22 Fed. Cas. 756, 767, reported by 2 Gall. 105, 139, defined a retroactive application of a law as, " '[u]pon principle, * * * [no] statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or· considerations already past, * * *' " may be applied retroactively. The terms "retrospective" and "retroactive" have been used interchangeably by Ohio courts. *Fraternal Order of ·Police* v. *Hunter* (1975), 49 Ohio App. 2d 185, 3 O.O. 3d 252, 360 N.E. 2d 708.

Appellants did not have a vested right in retaining their status as classified civil service employees. At the time the amendment was enacted, R.C. 124.11 neither directly expressed nor implied that once a public employee is placed in the classified civil service, the employee has a vested right to retain such status indefinitely. There is no language to be found in R.C. 124.11 which would support the contention that appellants had a vested right to a perpetual status as classified civil service employees.

This case is not one where classified employees were laid off, an appeal was then filed with the board and, subsequently, the statute was amended, based upon which the board refused to hear the appeal of the appellants. Under such circumstances, it could be argued that the employees' rights had vested at the time of the layoff prior to the amendment and, hence, the employees were entitled to have their appeal heard before the board. Appellants were unclassified as of October 4, 1984 and, subsequently, received notice of their layoffs almost nine and one-half months later on July 17, 1985. Thus, the amendment neither removed

nor impaired vested rights acquired under existing statutes.

Moreover, it is apparent that the legislature intended to declassify all county hospital employees at the time the statute was amended. The purpose of the amended statute would be circumvented if only those county hospital employees hired after October 4, 1984 were unclassified, while all county hospital employees hired prior to the amendment would indefinitely remain classified civil service employees unless they violated R.C. 124.34.

Therefore, appellants' third assignment of error is not well-taken.

In appellant's fourth assignment of error, they contend that the amended statute which excluded county hospital employees from .the classified civil service, while still including other public .hospital employees, violates the Equal Protection Clauses of the Ohio and United States Constitutions. Appellants assert that there is no reasonable basis for the distinction . between the two groups and, thus, the arbitrary classification is invalid. *Clifford* v. *Daugherty* (1980), 62 Ohio St. 2d 414, 16 O.O. 3d 443, 406 N.E. 2d 517. Both parties agree that the test to be applied to these circumstances is whether the classification bears a rational relationship to a governmental objective, since neither a fundamental right nor suspect classification is involved. *Wargetz* v. *Villa Sancta Anna Home for the Aged* (1984), 11 Ohio St. 3d 15, 11 OBR 49, 462 N.E. 2d 1215.

R.C. 339.06 provides for the authority granted to the board of county trustees. This is a broad authority which essentially grants this ·board the power necessary to manage and control the hospital. The statute further provides:

"Such physicians, nurses, and other employees may be suspended or removed by the administrator or his

142

designee at any time when the welfare of such institution warrants suspension or removal. * * *"

The amendment to R.C. 124.11 placing county hospital employees into the unclassified service furthers the legislative policy of granting exclusive control of a county hospital to the board of county trustees. This action is justified by the fact that managing a hospital in the best interests of the public involves time and expertise seldom available to county commissioners. This is a reasonable justification for the amendment and resulting classification. Thus, there was not a violation of the Equal Protection Clause.

Appellants' fourth assignment of error is not well-taken.

For the foregoing reasons, appellant's assignments of error are overruled, and the judgment of the court of common pleas is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and McCORMAC, JJ., concur.