[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 283.]

THE STATE EX REL. MCGINTY, APPELLANT, *v*. CLEVELAND CITY SCHOOL

DISTRICT BOARD OF EDUCATION, APPELLEE.

[Cite as *State ex rel. McGinty v. Cleveland City School Dist. Bd. of Edn.*,

**1998-Ohio-471.**]

*Mandamus to compel board of education to issue relator two-year contracts from the 1992-1993 school year through the 1995-1996 school year—Writ denied, when.*

(No. 97-429—Submitted January 20, 1998—Decided March 25, 1998.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 70398.

_____

{¶ 1} Appellee, Cleveland City School District Board of Education ("board"), employed appellant, Michael McGinty, in various positions from 1965 until 1978 and from 1979 until the nonrenewal of his contract in 1993. From 1982 until 1993, McGinty held the title and performed the duties of "Manager-technical support." In this position, McGinty's duties enabled him to be considered either a "supervisor" or a "management level employee," as defined in R.C. 4117.01.

{¶ 2} In 1987, the General Assembly amended R.C. 3319.02 to include certain noncertificated administrators within the definition of "other administrators." With the amendment, McGinty's position as manager in charge of technical support classified him as an R.C. 3319.02 "other administrator." As amended, R.C. 3319.02 provided:

"(A) As used in this section, 'other administrator' means any employee in a position for which a board of education requires a certificate of the type described by division (G), (K), or (M) of section 3319.22 of the Revised Code, provided that an employee required to have the type of certificate described by division (K) of such section spends less than fifty per cent of his time teaching or working with

students, *or any other employee, except the superintendent, whose job duties enable him to be considered as either a 'supervisor' or a 'management level employee,' as defined in Section 4117.01 of the Revised Code.*

"* * *

"(C) * * * *The board of education shall execute a written contract of employment with each* assistant superintendent, principal, assistant principal, and *other administrator it employs or reemploys. The term of such contract shall not exceed three years except that in the case of a person who has been employed by the school district as an* assistant superintendent, principal, assistant principal, or *other administrator for three years or more, the term of his contract shall be for not more than five years and, unless the superintendent recommends otherwise, not less than two years. If the superintendent so recommends, the term of the contract of a person who has been employed by the school district as an* assistant superintendent, principal, assistant principal, or *other administrator for three years or more may be one year, but all subsequent contracts granted such person shall be for a term of not less than two years and not more than five years. * * *"* (Emphasis added.) (142 Ohio Laws, Part II, 2017-2018.)

{¶ 3} During the school years commencing in 1987, 1988, 1989, 1990, and 1991, the board did not execute any written employment contract with McGinty. In late 1987 and early 1988, the board tendered and withdrew a three-year written employment contract for McGinty. In 1991, the board rescinded its previous policy that authorized the Superintendent of Cleveland Public Schools to establish the employment contract terms of administrators employed by the board. The board resolved to ratify "any employment contracts" with administrators who had contracted with the superintendent. About nine months later, one of the board's attorneys advised the board that (1) before the September 10, 1987 effective date of the amendment to R.C. 3319.02, noncertificated administrators were probably unclassified civil service employees, (2) the 1987 amendment applied to

2

noncertificated administrators who were appointed to their positions before the effective date of the amendment, and (3) the board probably had to offer limited contracts to noncertificated administrators as a condition of further employment.

{¶ 4} In February 1992, the board resolved to direct the superintendent to prepare letters to be sent to the noncertificated administrators in order to clarify their contract status based on the 1987 amendment to R.C. 3319.02. A status report of board employees listed McGinty as an administrator who did not have any contract. In March 1992, the superintendent sent a letter to McGinty, which provided:

"The Board has determined that Ohio law, specifically Section 3319.02 of the Ohio Revised Code, has required since 1987 that a written limited contract govern your employment. As you are aware, for a variety of reasons no such contract was entered into in 1987 or thereafter. The Board has concluded that because you do not have a written limited contract as required by Ohio law, you are employed on an at-will basis, and the Board may legally terminate your employment at any time at the sole discretion of the Board.

"Nevertheless, as a gesture of good faith, *the Board is willing to treat you as though you have a contract that expires in September of this year.* Ohio Revised Code Section 3319.02 permits the Board either to renew or to decline to renew your contract as of that date. * * *" (Emphasis added.)

{¶ 5} On March 28, 1992, upon the superintendent's recommendation, the board resolved to reemploy McGinty for one year, commencing August 8, 1992 and ending August 6, 1993. In October 1992, the board issued the one-year written contract to McGinty. Between the time in late 1987 and early 1988 when the board tendered and withdrew a three-year written contract and the time that the board issued a one-year written contract for the 1992-1993 school year, McGinty was evaluated on an annual basis by his superiors. According to McGinty, his superiors advised him during these evaluations that he would be employed each following

year at a certain salary, and that he believed his annual evaluations and reemployment were done upon the recommendation of the superintendent and at the board's direction.  By letter dated March 29, 1993, the board notified McGinty of its decision not to renew his administrative contract for the 1993-1994 school year pursuant to R.C. 3319.02.  McGinty protested his nonrenewal and informed the superintendent that he believed that he was entitled to further employment under R.C. 3319.02.

{¶ 6} In March 1996, McGinty filed a complaint in the Court of Appeals for Cuyahoga County.  McGinty requested a writ of mandamus to compel the board to (1) issue him a two-year contract for the 1992-1993 and 1993-1994 school years and a second two-year contract for the 1994-1995 and 1995-1996 school years, (2) reinstate him pursuant to these contracts, and (3) pay him lost wages and benefits.  Following the filing of evidence and briefs, the court of appeals denied the writ.

{¶ 7} The cause is now before this court upon McGinty's appeal as of right as well as his request for oral argument.

———————————

*Berkman, Gordon, Murray & DeVan*, *Jeremy A. Rosenbaum* and *Larry S. Gordon*, for appellant.

*Wanda Rembert Arnold* and *George S. Crisci*, for appellee.

———————————

***Per Curiam.***

*Oral Argument*

{¶ 8} McGinty requests oral argument for this appeal.  Under S.Ct.Prac.R. IX(1), certain appeals must be orally argued.  In all other appeals, including this one, the court "may order oral argument on the merits either *sua sponte* or in response to a request by any party."  S.Ct.Prac.R. IX(2)(A).  Among the factors we consider in determining whether to grant oral argument under S.Ct.Prac.R. IX(2)(A) are whether the case involves a matter of great public importance,

complex issues of law or fact, a substantial constitutional issue, or a conflict between courts of appeals. Cf. S.Ct.Prac.R. II(1)(A); Section 2(B)(2), Article IV, Ohio Constitution.

{¶ 9} For the following reasons, oral argument is not warranted. First, this case does not involve a matter of great public importance. There is no evidence or argument that this case will affect more administrators than McGinty. Second, the legal and factual issues are not sufficiently complex to warrant oral argument. Third, although McGinty raises a constitutional issue, *i.e.*, the claimed retroactive application of the 1987 amendment to McGinty's employment, this issue is not a substantial one and can be resolved without oral argument. See discussion *infra*. Fourth, McGinty does not claim any conflict between courts of appeals. Finally, McGinty does not specify in his request any reason why oral argument would be beneficial to a resolution of this appeal.

{¶ 10} Based on the foregoing, we deny McGinty's request for oral argument and proceed to the merits of his appeal.

*Merits*

{¶ 11} McGinty asserts in his various propositions of law that the court of appeals erred by denying the writ of mandamus. In order to be entitled to the writ, McGinty had to establish a clear legal right to the issuance of two-year contracts from the 1992-1993 school year through the 1995-1996 school year and a corresponding clear legal duty for the board to provide these contracts. *State ex rel. Stiller v. Columbiana Exempted Village School Dist. Bd. of Edn.* (1995), 74 Ohio St.3d 113, 114, 656 N.E.2d 679, 680. The parties stipulated that McGinty lacked an adequate remedy in the ordinary course of law to compel the board to perform the requested acts. See, generally, *State ex rel. Donaldson v. Athens City School Dist. Bd. of Edn.* (1994), 68 Ohio St.3d 145, 149, 624 N.E.2d 709, 713.

{¶ 12} The court of appeals determined that McGinty was employed under contracts by operation of law for school years 1987-1989, 1989-1991, and 1991-

1993, and that he was properly notified of his termination of employment at the conclusion of the 1992-1993 school year.

{¶ 13} McGinty contends that although the court of appeals correctly implied two-year contracts by operation of law, it erred in holding that his first contract by operation of law was for school years 1987-1989. McGinty claims that construing Am.H.B. No. 107, the 1987 amendment to R.C. 3319.02, to require an initial contract for 1987-1989 retroactively impairs his preexisting contract for the 1987-1988 school year. According to McGinty, the appropriate interpretation of the 1987 amendment to R.C. 3319.02 requires that his first two-year contract by operation of law be for 1988-1990 rather than 1987-1989, with subsequent two-year contracts for 1990-1992, 1992-1994, and 1994-1996 under R.C. 3319.02(C). Under McGinty's interpretation, the board's notice of nonrenewal at the conclusion of the 1992-1993 school year did not terminate his employment because it did not come during the last year of his two-year contract for 1992-1994.

{¶ 14} For the following reasons, McGinty's contentions are meritless and he was employed under contracts by operation of law for 1987-1989, 1989-1991, and 1991-1993, and his employment with the board was properly terminated at the conclusion of the 1992-1993 school year.

{¶ 15} Under R.C. 3319.02, as amended in 1987, the board had an express duty to execute a written employment contract for each "other administrator," including McGinty. R.C. 3319.02(C) ("The board of education shall execute a written contract of employment with each * * * other administrator it employs or reemploys."); *State ex rel. Smith v. Etheridge* (1992), 65 Ohio St.3d 501, 504, 605 N.E.2d 59, 62. Because the board did not comply with its R.C. 3319.02(C) duty, McGinty was entitled to a contract by operation of law beginning with the September 10, 1987 effective date of the amendment to R.C. 3319.02.

{¶ 16} The term of this initial contract was the statutory minimum of two years, from September 1987 to the end of the 1988-1989 school year. See R.C.

3319.02(C) ("[I]n the case of a person who has been employed by the school district as an * * * other administrator for three years or more, the term of his contract shall be for not more than five years and, unless the superintendent of the district recommends otherwise, not less than two years."); cf. *Hara v. Montgomery Cty. Joint Vocational School Dist.* (1996), 75 Ohio St.3d 60, 661 N.E.2d 711, and *Barton v. Warren City School Dist. Bd. of Edn.* (Nov. 22, 1996), Trumbull App. No. 96-T-5395, unreported, 1996 WL 701181, holding that initial automatic renewals under former R.C. 3319.11 were for minimum one-year terms rather than maximum terms permitted by statute. " 'The extraordinary writ of mandamus cannot be used to control the exercise of administrative or legislative discretion.' " *State ex rel. Crabtree v. Franklin Cty. Bd. of Health* (1997), 77 Ohio St.3d 247, 249, 673 N.E.2d 1281, 1283, quoting *State ex rel. Dublin v. Delaware Cty. Bd. of Commrs.* (1991), 62 Ohio St.3d 55, 60, 577 N.E.2d 1088, 1093. Here, McGinty does not contend that if the board had exercised its discretion, he would have received a written employment contract beginning in September 1987 with a term longer than the statutory minimum of two years for administrators employed for three years or more by the board.

{¶ 17} As noted previously, McGinty instead claims that the proper statutory interpretation of the 1987 amendment to R.C. 3319.02 requires that his first contract by operation of law be for 1988-1990 rather than 1987-1989, and that construing Am.H.B. No. 107 to require an initial contract for 1987-1989 retroactively impairs his preexisting contract for the 1987-1988 school year. To support his claim of an initial contract for 1988-1990 rather than 1987-1989, McGinty relies on *Donaldson*, in which the court held that under the 1987 amendment to R.C. 3319.02, the administrator was deemed reemployed for the 1988-1989 school year by operation of law under R.C. 3319.02(C) when the school board did not give him timely written notice of its intention not to reemploy him before or on the last day of March 1988.

{¶ 18} McGinty's claims require statutory interpretation of Am.H.B. No. 107. Am.H.B. No. 107 contains no retrospective language and therefore operates only prospectively. See *Cole v. Holland* (1996), 76 Ohio St.3d 220, 225, 667 N.E.2d 353, 356; R.C. 1.48 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."). Courts must liberally construe statutes like the 1987 amendment to Am.H.B. No. 107 in order to avoid constitutional infirmities. *Hughes v. Ohio Bur. of Motor Vehicles* (1997), 79 Ohio St.3d 305, 307, 681 N.E.2d 430, 432. Section 28, Article II of the Ohio Constitution prohibits the General Assembly from enacting "retroactive laws, or laws impairing the obligation of contracts." See *Kiser v. Coleman* (1986), 28 Ohio St.3d 259, 28 OBR 337, 503 N.E.2d 753, syllabus ("The retroactive application of R.C. 5313.07 and 5313.08 to land installment contracts which were in existence at the time of the enactment of these statutes is violative of Section 28, Article II of the Ohio Constitution which prohibits the enactment of retroactive laws or laws impairing the obligation of contracts.").

{¶ 19} McGinty's claims, however, lack merit. First, finding that McGinty was entitled to an employment contract with a term beginning on the September 10, 1987 effective date of Am.H.B. No. 107 does not unconstitutionally impair preexisting contractual obligations. Although McGinty was employed by the board on the effective date of the amendment, he presented no evidence of any employment contract, oral or written, that existed on that date. Without any contract, there would be no contractual obligations to impair. See *Lawrence v. Edwin Shaw Hosp.* (1986), 34 Ohio App.3d 137, 140, 517 N.E.2d 984, 988 (While appellants were already employed by Edwin Shaw Hospital on the effective date of the amended statute, "[s]ince appellants have not demonstrated that any written or oral contract of employment existed between appellants and Edwin Shaw Hospital, the amended statute could not have impaired the obligations of any alleged contract between the parties as none was shown to exist."). McGinty merely introduced

evidence that *after* late 1987-early 1988, he was advised by his superiors and not the board that he would be employed each *following* year at a certain salary and with certain benefits. This does not establish the existence of any oral or written employment contract for the 1987-1988 school year, let alone the years following it. The 1992 status report of board employees specifically listed McGinty as an administrator who did not have a contract.

{¶ 20} Second, even assuming an oral employment-at-will contract, there is no evidence of any specific duration to this contract. Consequently, application of the 1987 amendment to R.C. 3319.02 to this purported contract did not impair any obligation under the contract. McGinty did not introduce evidence that application of the amended statute to him on its effective date of September 10, 1987 impairs or takes away any vested rights to continued employment or other benefits he might have enjoyed in 1987 and 1988 under any alleged oral employment contract in the 1987-1988 school year.

{¶ 21} Third, *Donaldson* is inapposite because the administrator in that case was employed under an existing part-time contract for the 1987-1988 school year. *Donaldson*, 68 Ohio St.3d at 147, 624 N.E.2d at 712.

{¶ 22} Fourth, finding a two-year employment contract beginning on the September 10, 1987 effective date of Am.H.B. No. 107 satisfies the court's duty to liberally construe R.C. 3319.02 in favor of all administrators generally. See *State ex rel. Rogers v. Cleveland City School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 197, 199, 652 N.E.2d 756, 758. By contrast, McGinty's interpretation, which suspends a board of education's duty to comply with R.C. 3319.02 until the 1988-1989 school year, would have permitted boards to fire administrators after the effective date of Am.H.B. No. 107 but before the 1988-1989 school year. As the board notes, such interpretation appears to favor no administrator *except* McGinty.

{¶ 23} Finally, issuance of a two-year employment contract by operation of law for the period from September 10, 1987 through the conclusion of the 1988-

1989 school year comports with the Attorney General's interpretation of the 1987 amendment to R.C. 3319.02:

"Am.H.B. 107 does not address the precise time or manner in which the provisions of R.C. 3319.02 are to come into effect with respect to individuals who were previously employed under R.C. 3319.081. * * * *[H]owever, it appears that such employees became subject to R.C. 3319.02 as soon as the provisions of Am.H.B. 107 came into effect.* The provisions of Am.H.B. No. 107 did not, however, terminate any contractual rights that the employees had. Thus, their employment continues in accordance with contracts that pre-date the amendment until such time as those contracts terminate according to their own terms * * *." (Emphasis added.) 1988 Ohio Atty.Gen.Ops. No. 88-059, at 2-301.

{¶ 24} Although the court of appeals erroneously relied on R.C. 3319.02(C)'s automatic two-year reemployment provision to imply this initial 1987-1989 employment term, it reached the correct conclusion. "[A] reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." *State ex rel. Peeples v. Anderson* (1995), 73 Ohio St.3d 559, 560, 653 N.E.2d 371, 373; *Cassels*, 69 Ohio St.3d at 222, 631 N.E.2d at 154.

{¶ 25} As the court of appeals also correctly concluded, McGinty subsequently received two-year contracts for 1989-1991 and 1991-1993 because the board failed to either reemploy him under a written contract or give him written notice of its intention not to reemploy him pursuant to R.C. 3319.02(C), which provides: "An * * * other administrator is, at the expiration of the current term of employment, deemed reemployed at the same salary plus any increments that may be authorized by the board * * *, unless such board, on or before the last day of March of the year in which the contract of employment expires, either reemploys him for a succeeding term or gives him written notice of its intention not to reemploy him. The term of reemployment of a person reemployed under this

paragraph shall be one year, except that if such person has been employed by the school district * * * as an * * * other administrator for three years or more, the term of reemployment shall be two years." See, also, *State ex rel. Luckey v. Etheridge* (1992), 62 Ohio St.3d 404, 583 N.E.2d 960; *State ex rel. Brennan v. Vinton Cty. Local School Dist. Bd. of Edn.* (1985), 18 Ohio St.3d 208, 18 OBR 271, 480 N.E.2d 476.

{¶ 26} The board, however, properly gave timely written notice before the last day of March of the year in which McGinty's 1991-1993 implied contract expired of its intention not to reemploy him pursuant to R.C. 3319.02(C). *Rogers.* The written one-year contract issued by the board for the 1992-1993 school year does not alter this result. As the court of appeals held, during the 1992-1993 school year, McGinty was already in the second year of a two-year contract by operation of law.

{¶ 27} Based on the foregoing, McGinty established neither a clear legal right to additional employment with the board following the 1992-1993 school year nor a corresponding legal duty on the part of the board to provide such employment. McGinty was employed by operation of law under two-year contracts for 1987-1989, 1989-1991, and 1991-1993, and his employment was terminated by timely written notice of nonrenewal in March 1993. Accordingly, we affirm the judgment of the court of appeals denying the writ.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

F.E. SWEENEY, J., dissents and would reverse the judgment of the court of appeals.

————————————