DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} On November 22, 2005, a Summit County Sheriff's narcotics detective intercepted a Federal Express envelope addressed to defendant Michael Sziva. A box inside the envelope contained 331.78 grams of methamphetamine. An Akron Police narcotics detective delivered the envelope to Mr. Sziva's home, and members of the Akron Police Department then executed a search warrant for his home and recovered the envelope. Mr. Sziva was arrested and charged with aggravated possession of drugs with a major drug offender specification, complicity to commit aggravated trafficking in drugs, and conspiracy to commit aggravated trafficking in drugs. He was tried before a jury and convicted of all *Page 2 
three charges. On appeal, he has argued that the trial court: (1) violated his right to confront witnesses and the hearsay rule by receiving into evidence, through the testimony of an Akron Police narcotics detective, statements made by the person who had sent the envelope to him; and (2) incorrectly excluded testimony he proffered regarding the claimed modus operandi of the person who had sent the envelope to him and the claimed source of the money that person used to purchase the methamphetamine contained in the envelope. This Court affirms Mr. Sziva's convictions because: (1) the statements about which the detective testified were not "testimonial" and were within an exception to the hearsay rule; and (2) Mr. Sziva failed to proffer a foundation for the modus-operandi testimony and, even if the trial court erred in excluding the proffered money-source testimony, Mr. Sziva was not prejudiced by that error.
 I. {¶ 2} On November 22, 2005, a Summit County Sheriff's narcotics detective watching packages being offloaded from trucks at a Federal Express terminal in Akron spotted an envelope that he considered suspicious. Although the return address on the envelope was for a business, shipping for the envelope had been paid in cash, which is unusual for items originating from businesses. Additionally, the label on the envelope had been filled out by hand rather than using a computer, which is also unusual for items originating from businesses. The envelope was sent overnight priority, which, according to the detective who *Page 3 
intercepted it, is a practice followed by people shipping drugs in order to minimize the amount of time the drugs are in transit, thereby also minimizing the opportunities for interception. Finally, the envelope had been sent from a Federal Express terminal in Phoenix, Arizona. Apparently, Phoenix is often an origin for drug shipments.
 {¶ 3} The detective placed the suspicious envelope among ten to twelve similar envelopes and commanded a drug-sniffing dog for which he was the handler to search for drugs. It alerted on the suspicious envelope. He than telephoned an Akron Police Detective who was also a drug-sniffing dog handler and asked him to bring his dog to the terminal. When that dog arrived, it also alerted on the suspicious envelope. The officers provided Federal Express a receipt for the envelope and took it with them while they obtained a search warrant for its contents. Inside the envelope, they found a 6.75-by 6.75-by 3.25-inch box that contained a substance that tested positive for methamphetamine. It was later determined that the box contained 331.78 grams of methamphetamine, which had a street value of between $30,000 and $40,000.
 {¶ 4} The envelope was addressed to Mr. Sziva at his home in Akron. The Akron Police Department decided to do a "controlled delivery" of the envelope. They obtained a search warrant for Mr. Sziva's home, contingent upon Mr. Sziva accepting the envelope. An Akron narcotics detective, dressed like a Federal Express employee, took the envelope to Mr. Sziva's home. A number of other *Page 4 
officers were stationed nearby in preparation for executing the search warrant. When nobody answered the door, the detective left a door hanger indicating that a delivery had been attempted. He returned forty-five minutes to an hour later and, when again nobody answered the door, left the envelope in Mr. Sziva's mailbox. Mr. Sziva retrieved the envelope a few minutes later, and, a few minutes after that, the officers entered his home to execute the search warrant.
 {¶ 5} The officers recovered the Federal Express envelope, still unopened, near the door through which Mr. Sziva had taken it into his house. They also recovered a gun, a second package containing 4.98 grams of methamphetamine, and some glass pipes of a type used to smoke methamphetamine.
 {¶ 6} An Akron narcotics detective read Mr. Sziva his Miranda rights, which he waived. Officers than asked him if he knew why the officers were at his house, and he said he believed it had something to do with the Federal Express envelope. He claimed, however, that he believed the envelope contained speakers, shipped to him by a man named Ron Phillips. One of the officers who questioned him testified at trial that, as the interview continued, Mr. Sziva acknowledged that he used methamphetamine and that Mr. Phillips was the person from whom he purchased methamphetamine. The officer further testified that Mr. Sziva admitted that he had given Mr. Phillips $1000 several months before for methamphetamine, which Mr. Phillips was going to send him. According to the officer, however, Mr. Sziva also stated that, between the time he gave Mr. Phillips the money and the *Page 5 
time Mr. Phillips left town, he obtained some clothes and a tool from Mr. Phillips, thereby reducing the amount of money Mr. Phillips was holding toward methamphetamine for him to $800.
 {¶ 7} A second officer who questioned Mr. Sziva testified that he had asked Mr. Sziva what he was getting in return for allowing Mr. Phillips to send drugs to him. He said he told Mr. Sziva that the Federal Express envelope contained over 100 times bulk amount and that that would meet major drug offender status. He testified that Mr. Sziva then acknowledged that he had had "a pretty good idea" what was in the envelope and that he was expecting to get "a little something," but that he did not know it would be "that much." According to the officer, Mr. Sziva said that he was not going to take the "full rap for that." The officer testified that Mr. Sziva then said Mr. Phillips had sent the envelope to him and that he would tell the officers about Mr. Phillips and, if they wanted, call him.
 {¶ 8} The officers placed a recording device on Mr. Sziva's cellular telephone and recorded three telephone conversations Mr. Sziva had with Mr. Phillips. In the first conversation, Mr. Phillips asked if everything was good and Mr. Sziva responded that everything was good. Mr. Sziva then asked when Mr. Phillips would be coming back, and he responded that he was 30 to 40 minutes away on the Ohio Turnpike and would come to Mr. Sziva's house after making one stop. In the second conversation, Mr. Phillips indicated that he was close and "made a comment about having a nice, or piece of ice in a glass with a diet Coke." *Page 6 
In the third conversation, Mr. Phillips said that he was at a gas station and would be at Mr. Sziva's house in a couple of minutes. When Mr. Phillips arrived at Mr. Sziva's house, he was arrested.
 {¶ 9} Mr. Sziva testified at trial and acknowledged that he had been using methamphetamine for close to a year before his arrest. He further acknowledged that he bought his methamphetamine from Mr. Phillips. He claimed that he had told Mr. Phillips that he was looking for some "dome tweeter" speakers for his van and that Mr. Phillips had telephoned him and told him that he had found some. He asked if, since he was out of town, he could send them, to which Mr. Sziva said yes. He denied that he and Mr. Phillips had ever discussed Mr. Phillips sending him drugs.
 {¶ 10} Mr. Sziva testified that, when the Federal Express envelope arrived, "it just felt like nothing was in it." He testified that he set the envelope by the door and then the police "come breaking in my house."
 {¶ 11} He denied having told the officers that he had provided Mr. Phillips $800 toward the methamphetamine that was shipped to him. He said that he had taken $1000 over to Mr. Phillips's house a week or two before his arrest for the purpose of buying some clothes, a tool, and some methamphetamine. He said that the price for the methamphetamine was $100 per gram. He used $200 of the $1000 for the clothes and tool. He also obtained five grams of methamphetamine, all that Mr. Phillips then had, which was the methamphetamine the officers found *Page 7 
when they searched his house. He said that Mr. Phillips still owed him three grams of methamphetamine, but that it had nothing to do with the envelope he received on the day of his arrest. He denied that he had agreed to allow Mr. Phillips to send methamphetamine to him and denied ever having told the officers that he had. He acknowledged having had the three telephone conversations with Mr. Phillips after his arrest.
 {¶ 12} Mr. Sziva's lawyer attempted to call as a witness a person named Andrew Pratt, and the trial court would not permit him to do so. Mr. Sziva's lawyer stated that Mr. Pratt was "close to" Ron Phillips and proffered what his testimony would have been:
 He would testify that he knew because he was with Mr. Phillips, that Mr. Phillips had secured $10,000 from someone else, not from my client, in order to go to Arizona to purchase drugs and that it was his intention to ship them back to my client.
 He would also say that Mr. Phillips has a modus operandi. One of the things that he does is ship drugs from other states to people in Ohio often to unknown people. He would send them to vacant houses or to other people where he said I am going to send you X, and Y would be in there. He would say that I am sending you something and it would turn out to be drugs.
The trial court reiterated its ruling, stating that the testimony proffered by Mr. Sziva's lawyer would be "inadmissible hearsay."
 {¶ 13} The jury convicted Mr. Sziva of aggravated possession of drugs with a major drug offender specification, complicity to commit aggravated trafficking in drugs, and conspiracy to commit aggravated trafficking in drugs. The trial court *Page 8 
sentenced him to mandatory terms of ten years in prison on the aggravated possession charge, ten years in prison on the complicity charge, and eight years in prison on the conspiracy charge, all to be served concurrently. The trial court also suspended his driver's license for six months on each charge. Mr. Sziva has assigned two errors on appeal.
 II. A. {¶ 14} Mr. Sziva's first assignment of error is that the trial court incorrectly allowed an Akron narcotics detective to testify regarding what Mr. Phillips said in his telephone conversations with Mr. Sziva. According to Mr. Sziva, the detective's testimony violated his right to confront a witness against him and violated the hearsay rule.
 {¶ 15} In Crawford v. Washington, 541 U.S. 36, 53-54 (2004), the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Mr. Phillips was unavailable to testify at trial because he had absconded. Further, Mr. Sziva did not have a prior opportunity to cross-examine him. If his statements were "testimonial," therefore, they could not be received in evidence without offending the Confrontation Clause. *Page 9 
 {¶ 16} As has been noted by the Ohio Supreme Court, the United States Supreme Court, in Crawford, declined to define "testimonial statements" for Confrontation Clause purposes. State v. Stahl, 111 Ohio St. 3d 186,2006-Ohio-5482, ¶ 19. It did, however, provide three examples of "formulations" of "testimonial statements":
 The first deems testimonial all "`ex parte
in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.'". . . The second includes all "`extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.'". . . And the third includes "`statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'"
Id. (quoting Crawford, 541 U.S. at 51-52). Of the three formulations, only the third is potentially relevant to Mr. Phillips's statements in his telephone conversations with Mr. Sziva.
 {¶ 17} As also has been noted by the Ohio Supreme Court, the United States Supreme Court provided further guidance in Davis v.Washington, ___ U.S. ___, 126 S.Ct. 2266 (2006), about how to determine whether statements potentially within the third formulation are "testimonial":
 In its analysis, the court explained that "[statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.". . . Conversely, the court stated, statements "are testimonial when the circumstances objectively indicate that there is *Page 10 
no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."
Stahl, 111 Ohio St. 3d at ¶ 23 (quoting Davis, 126 S. Ct. at 2273-2274) (emphasis added by the court in Stahl). In determining the "primary purpose" of interrogation for Confrontation Clause purposes, it is necessary to focus on the expectation of the declarant:
 In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations.
Id. at ¶ 36.
 {¶ 18} In this case, Mr. Sziva was arguably acting as an agent of police when he engaged Mr. Phillips in the telephone conversations. Mr. Phillips, however, did not know that. Focusing on Mr. Phillips's reasonable expectation leads to the conclusion that his "primary purpose" would not have related to later criminal prosecution. In fact, providing information to Mr. Sziva for use in a later criminal prosecution would have been no part of Mr. Phillips's purpose. His purposes were to ask Mr. Sziva whether everything was good and to update him on the progress of his trip back from Arizona. His statements, therefore, were not testimonial for purposes of the Confrontation Clause. To the extent Mr. Sziva's first assignment of error is based on the Confrontation Clause, it must be overruled. *Page 11 
 {¶ 19} Rule 802 of the Ohio Rules of Evidence provides that hearsay is generally not admissible. Rule 801(C) of the Ohio Rules of Evidence defines hearsay as a statement offered to prove the truth of the matter asserted:
 "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.
Among the exceptions to hearsay is present sense impression:
 {¶ 20} A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.
Ohio Rule of Evidence 803 (1).
 {¶ 21} To the extent Mr. Phillips described where he was and what he was doing in his telephone conversation with Mr. Sziva, his statements were present sense impressions and, therefore, the detective's testimony reciting them was not hearsay. Further, Mr. Phillips's statement about his intention to have a piece of ice in a glass of diet coke was not offered to prove the truth of the matter asserted, but rather was offered to show that Mr. Phillips had made a reference to methamphetamine ("ice") and, therefore, as circumstantial evidence that they both were aware that the Federal Express envelope contained methamphetamine. That statement, therefore, was not hearsay. But see,Lyle v. Koehler, 720 F.2d 426 (6th Cir. 1983).
 {¶ 22} Admission of the detective's testimony regarding Mr. Phillips's statements during his telephone conversations with Mr. Sziva did not violate either *Page 12 
the Confrontation Clause or the hearsay rule. Accordingly, Mr. Sziva's first assignment of error is overruled.
 B. {¶ 23} Mr. Sziva's second assignment of error is that the trial court incorrectly refused to allow Andrew Pratt to testify. Mr. Sziva's lawyer proffered that Mr. Pratt would have testified regarding Mr. Phillips's claimed modus operandi and the claimed source of the money Mr. Phillips used to purchase the methamphetamine that he sent to Mr. Sziva. The trial court refused to allow the testimony, ruling that it would be inadmissible hearsay.
 {¶ 24} It is unclear whether Mr. Pratt's testimony regarding Mr. Phillips's claimed modus operandi would have been hearsay. The real problem with the proffer regarding that testimony was that it did not include a foundation for Mr. Pratt's claimed knowledge. Rule 602 of the Ohio Rules of Evidence provides that evidence establishing a witness's personal knowledge of the matters about which he will testify must be introduced:
 A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself.
The part of the proffer dealing with Mr. Phillips's claimed modus operandi did not include how Mr. Pratt supposedly knew about that modus operandi:
 He would also say that Mr. Phillips has a modus operandi. One of the things that he does is ship drugs from other states to people in Ohio often to unknown people. He would send them to vacant *Page 13 
houses or to other people where he said I am going to send you X, and Y would be there. He would say that I am sending you something and it would turn out to be drugs.
If Mr. Pratt's claimed knowledge of Mr. Phillips's modus operandi was based on things told him by other people, he did not have personal knowledge of it. If he participated with Mr. Phillips in sending drugs to unsuspecting people or if Mr. Phillips had sent him drugs that he was not expecting, he would have had personal knowledge. Because the proffer did not include a foundation for his knowledge, the trial court correctly excluded his testimony. "A reviewing court is not authorized to reverse a correct judgment merely because it was reached for a wrong reason." State v. Lozier, 101 Ohio St. 3d 161, 166-167 (2004) (citingState ex rel. McGinty v. Cleveland City School Dist. Bd. of Edn.,81 Ohio St. 3d 283, 290 (1998)). To the extent Mr. Sziva's second assignment of error is based on the trial court's exclusion of Mr. Pratt's proffered modus-operandi testimony, therefore, it must be overruled.
 {¶ 25} Part of the remainder of the proffer did include a proper foundation. Mr. Sziva's lawyer said that Mr. Pratt was present when Mr. Phillips obtained $10,000. He, therefore, would have had personal knowledge of Mr. Phillips obtaining the money:
 He would testify that he knew because he was with Mr. Phillips, that Mr. Phillips had secured $10,000 from someone else, not from my client, in order to go to Arizona to purchase drugs and that it was his intention to ship them back to my client. *Page 14 
To the extent this part of the proffer related to the assertion that the money would be used for drugs purchased in Arizona and shipped to Mr. Sziva, however, it did not include a proper foundation, and that part was properly excluded. Assuming that the trial court erred in excluding Mr. Pratt's testimony that he was present when Mr. Phillips obtained $10,000, Mr. Sziva was not prejudiced by the exclusion of that testimony. Even if that $10,000 could be assumed to have been an investment in the methamphetamine that Mr. Phillips sent Mr. Sziva, that methamphetamine had a street value of between $30,000 and $40,000. The fact that a different person had invested $10,000 toward its purchase did not tend to prove that Mr. Sziva had not also invested money toward its purchase. If the trial court erred by excluding Mr. Pratt's testimony that he saw Mr. Phillips obtain $10,000, that error was harmless within the meaning of Rule 52(A) of the Ohio Rules of Criminal Procedure. Mr. Sziva's second assignment of error must be overruled.
 III. {¶ 26} Mr. Sziva's assignments of error are overruled. The judgment of the Summit County Common Pleas Court is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 15 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
 SLABY, P. J., MOORE, J., CONCUR. *Page 1