61 F.3d 479
 102 Ed. Law Rep. 58
 Wilma CHRISTOPHEL, Plaintiff-Appellee,
Rita Williams, Plaintiff,
v.
Nancy KUKULINSKY, Joseph Steger, and Kathleen Gubser,
Defendants-Appellants,
University of Cincinnati, Academic Pathology Associates,
Inc., and Toni Gregory, Defendants.
 No. 94-3831.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 6, 1995.
Decided Aug. 3, 1995.
 
 1
 Alphonse A. Gerhardstein (argued and briefed), Laufman, Rauh & Gerhardstein, Cincinnati, OH, for Wilma Christophel and Rita Williams.
 
 
 2
 Frank H. Stewart (briefed), Gregory P. Rogers (argued and briefed), Taft, Stettinius & Hollister, Cincinnati, OH, for Nancy Kukulinsky, Kathleen Gubser and Joseph A. Steger.
 
 
 3
 Before: MARTIN and SILER, Circuit Judges; and JOINER, District Judge.*
 
 
 4
 JOINER, District Judge.
 
 
 5
 In this procedural due process action, plaintiff Wilma Christophel claims that the University of Cincinnati deprived her of the right to be a classified civil servant, and, consequently, the rights which would have accompanied that status when her employment with the University was terminated. Defendants Nancy Kukulinsky, Joseph Steger and Kathleen Gubser, all University employees allegedly involved in personnel actions affecting Christophel, appeal the denial of their motion for qualified immunity. We conclude that these defendants did not deprive Christophel of her right to procedural due process, and therefore reverse.
 
 I.
 A.
 Ohio's Civil Service System
 
 6
 The University of Cincinnati was a city-operated institution until 1977, when it became a state institution. As such, it was required to conform to the state's civil service system, as set forth in Ohio Rev.Code Ann. Secs. 124.01-124.99 (Anderson 1994). The University conducted a review of its job titles to determine whether they should be placed in the state's classified or unclassified civil service. The Ohio Department of Administrative Services (DAS) reviewed and approved the University's proposed civil service classifications.
 
 
 7
 There are critical differences between classified and unclassified civil servants. Applicants for classified positions are employed or appointed from eligibility lists, and are required to demonstrate their fitness for employment through competitive examination or providing evidence that they satisfy specific requirements. Classified civil servants have tenure during "good behavior and efficient service," can be discharged only for cause as set forth in Ohio Rev.Code Ann. Sec. 124.34, and have displacement or "bumping" rights in the event of job abolishment. See generally Deryck v. Akron City Sch. Dist., 633 F.Supp. 1180, 1182 (N.D.Ohio 1986), aff'd, 820 F.2d 405 (6th Cir.1987) (Table). A classified civil servant has the right to appeal a layoff to the State Personnel Board of Review (SPBR), and must do so no later than ten days after receipt of the notice of layoff. Ohio Rev.Code Sec. 124.328. Ohio's civil service statute creates a property right in continued employment for classified civil servants, and a classified civil servant may not be deprived of this right without due process. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).
 
 
 8
 Unclassified civil servants, on the other hand, are not required to satisfy the merit and fitness requirements applicable to the classified service. Such employees serve at the pleasure of the University's Board of Trustees, and have no displacement or bumping rights in the event of job abolishment. Concomitantly, unclassified civil servants are not themselves subject to bumping or displacement when other employees are laid off, and generally are paid more than classified civil servants. Unclassified civil servants have no right to appeal adverse job actions to the SPBR. Nonetheless, such an employee may appeal a discharge or layoff if the appeal is coupled with a claim that the employee was improperly designated as unclassified. The SPBR has jurisdiction over appeals from removals of public employees " 'if it determines that such employees are in the classified service, regardless of how they have been designated by their appointing authorities.' " Weiss v. Industrial Comm'n of Ohio, 65 Ohio St.3d 470, 605 N.E.2d 37, 40 (1992) (quoting Rarick v. Geauga Bd. of County Comm'rs., 63 Ohio St.2d 34, 406 N.E.2d 1101, 1103 (1980)). Finally, unclassified civil servants have no property right to continued employment. Vodila v. Clelland, 836 F.2d 231, 232 (6th Cir.1987).
 
 Christophel's Employment
 
 9
 Wilma Christophel was hired in 1972 as an accounting technician I, a classified position under the city's civil service system, and was promoted in 1975 to accounting technician II, an unclassified position. Christophel transferred to the Department of Pathology and Medicine in 1977, and was promoted to senior administrative assistant in that department in 1979. Christophel was responsible for all of the fiscal activities and functions of the business office, and her responsibilities continued to increase from 1979 forward. The title "senior administrative assistant" had been placed in the unclassified service in 1977, and the title remained in that category at all times relevant to this case. Christophel knew that her position was unclassified, and understood the differences between classified and unclassified service. Christophel simultaneously was employed by Academic Pathology Associates, Inc. (APA), the clinical "practice plan" for the pathology department, and performed the same job functions for both APA and the pathology department.
 
 
 10
 In 1990, an independent auditor hired by APA reported numerous administrative and managerial problems, leading the pathology department and APA to hire Nancy Kukulinsky as executive director, effective July 1, 1991. Kukulinsky immediately began evaluating the responsibilities of the employees in the business office and had a conference with Christophel to address concerns regarding her performance. Shortly thereafter, Kukulinsky decided to abolish a number of positions, including those held by Christophel with APA and the pathology department. Kukulinsky denies that this decision was related to performance concerns, a point disputed by Christophel.
 
 
 11
 On September 12, Kukulinsky met with Christophel and gave her both oral and written notice that her position was being abolished effective September 13 due to the reorganization of the department. Christophel was informed that she was entitled to six months notice, during which her salary and benefits would be continued unless she secured new employment. The letter did not inform Christophel of the ten-day limit on filing SPBR appeals as would have been required if Christophel were a classified employee. Thirty-five days after being informed that her position was being abolished, Christophel filed an appeal with the SPBR. Christophel also wrote to Kukulinsky, stating that she should have been in the classified service and that her layoff should have been accompanied with displacement rights. Christophel stated that her claim of entitlement to classified status would be the topic of her SPBR appeal, and requested the University to explore this issue with her prior to the SPBR hearing.
 
 
 12
 The University accommodated Christophel's request, stating that it would accord Christophel classified status as a senior business service assistant, but explaining that there were no such positions open at the time, and that this position would be abolished in the reorganization. The University formally notified Christophel on January 6, 1992, that her classified position was being abolished, and gave her the option of displacing a part-time employee or going on layoff status with the possibility of being recalled within one year. The letter informed Christophel of her right to appeal to the SPBR "within ten (10) days after receipt of this ... letter." (Emphasis added).
 
 
 13
 Christophel filed an appeal, but not until February 3, 1992, 18 days beyond the deadline for doing so. The appeal letter stated that it was an amendment to Christophel's original appeal, or, in the alternative, a new appeal which should be consolidated with the original appeal. Contemporaneously with the filing of the second appeal, an administrative law judge issued a report to the SPBR, recommending that Christophel's appeal be denied on timeliness grounds for lack of jurisdiction. The SPBR later accepted the report and recommendation and dismissed the appeal for lack of jurisdiction. Christophel did not appeal the SPBR determination to the Ohio Common Pleas Court.[1]
 
 B.
 
 14
 Christophel filed this suit in August 1992 pursuant to 42 U.S.C. Sec. 1983 against the University of Cincinnati, APA, and three individual defendants: Kukulinsky; Kathleen Gubser, the former interim director of personnel, who left the University in 1992; and Joseph Steger, the president of the University. The individual defendants are sued in their official capacities for purposes of seeking injunctive relief, and in their personal capacities for purposes of seeking damages. Christophel's complaint asserted four causes of action, but only the denial of the individual defendants' motion for qualified immunity on the constitutional claim is the subject of this interlocutory appeal.
 
 
 15
 Christophel's complaint is vague with respect to the constitutional right allegedly violated. The complaint alleges that the University has a history of mislabelling employees as unclassified rather than classified, causing such employees to lose job security.[2] The complaint further alleges that due to the improper labelling of Christophel's job as unclassified, she lost the right to displace similarly situated employees with less seniority and her right to challenge her termination before the SPBR. The complaint concludes, without further elaboration, that defendants deprived Christophel of "rights, privileges and immunities secured by the Fourteenth Amendment." In opposing defendants' motion for summary judgment, Christophel identified the constitutional right at issue as the right to procedural due process,[3] and contended that the University's classification system operated to deny her protected property rights in continued employment without pre-deprivation process.
 
 
 16
 The individual defendants moved for summary judgment, claiming that they were entitled to qualified immunity because they had not violated a clearly established constitutional right to procedural due process. The district court denied defendants' motion, finding that genuine issues of material fact remained with respect to whether the University had a system of misclassifying employees. Because of this fact issue, the court stated that it was unable to determine whether Christophel had received all the process due to her. The court stated that if Christophel were correct in her assertion that she was misclassified as an unclassified civil servant in violation of Ohio law, that defendants would have been acting outside their discretion in regard to that classification, and would not be entitled to the protection of qualified immunity.
 
 II.
 A.
 
 17
 A government official who performs discretionary functions is entitled to qualified immunity from civil suits for damages arising out of the performance of his official duties unless his alleged conduct violated clearly established constitutional rights of which a reasonable person would have known. Adams v. Metiva, 31 F.3d 375, 386 (6th Cir.1994). The doctrine recognizes that government officials need to perform their duties without fear of litigation, and to be able to reasonably anticipate if their actions will give rise to liability for damages. Williams v. Commonwealth of Ky., 24 F.3d 1526, 1541 (6th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 358, 130 L.Ed.2d 312 (1994). Thus, it has been said that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).
 
 
 18
 When a defendant asserts qualified immunity on summary judgment, the court may determine the currently applicable law and whether that law was clearly established at the time of the actions in question. Until the threshold immunity question is resolved, discovery should not be allowed. Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 1792-93, 114 L.Ed.2d 277 (1991) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). A court should not assume that a given set of facts would make out a constitutional violation, and decide the case based on whether those facts are sufficiently pled or proved. Siegert, 500 U.S. at 232, 111 S.Ct. at 1793. Rather, a court faced with a qualified immunity question should decide squarely whether a constitutional claim is presented:
 
 
 19
 A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits.
 
 
 20
 Id.
 
 
 21
 A district court's determination that defendants are not entitled to qualified immunity is immediately appealable under the "collateral order" doctrine, based in part on the fact that postponing review until after trial would not serve one important purpose of qualified immunity, "namely, protecting public officials, not simply from liability, but also from standing trial." Johnson v. Jones, --- U.S. ----, ----, 115 S.Ct. 2151, 2155, 132 L.Ed.2d 238 (1995) (citing Mitchell v. Forsyth, 472 U.S. 511, 525-27, 105 S.Ct. 2806, 2815-16, 86 L.Ed.2d 411 (1985)). The right to appeal is limited to questions of law, however, and a defendant entitled to invoke a qualified immunity defense may not appeal the denial of a motion for summary judgment if the district court's order determines only whether the record reflects genuine issues of fact for trial. Johnson, --- U.S. at ----, 115 S.Ct. at 2159 (denial of defendant police officers' motion for qualified immunity not appealable, where district court determined there was fact question whether defendants in question had participated in beating plaintiff). A defendant's right to appeal the denial of qualified immunity does not turn on the phrasing of the district court's order, however. Even when the district court denies summary judgment without stating its reasons for doing so, a court of appeals may decide the legal question underlying the qualified immunity defense. Id.
 
 
 22
 Although the district court's denial of defendants' motion for summary judgment in this case was premised in part on the existence of fact issues, the factual dispute does not affect defendants' right to qualified immunity. The legal question squarely presented by defendants' motion was whether the facts alleged by Christophel demonstrate that defendants violated her constitutional right to procedural due process, thus negating defendants' entitlement to qualified immunity from suit. The answer to this legal question is no.
 
 B.
 
 23
 "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....' " Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). In a procedural due process claim, the deprivation of property by state action is not itself unconstitutional; "what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (emphasis in original). Regardless of when the deprivation occurs, the constitutional violation "is not complete unless and until the State fails to provide due process." Id. at 126, 110 S.Ct. at 983 (emphasis added). Therefore, in order to determine whether there was a due process violation, it is necessary, first, to ask whether the plaintiff has demonstrated that she was deprived of a property right;[4] if she was so deprived, the question is whether the process provided was constitutionally adequate. The type of process due is a question of federal law. Loudermill, 470 U.S. at 540-41, 105 S.Ct. at 1492.
 
 
 24
 Christophel had unclassified status in September 1991 when her position as senior administrative assistant was abolished, and classified status in January 1992 when her position as senior business service assistant was abolished. We address the alleged denial of procedural due process with respect to each position.
 
 
 25
 Abolishment of Unclassified Position in 1991
 
 
 26
 Christophel argues that, although she was an unclassified civil servant in 1991 (and had enjoyed the benefits of that position for twelve years without complaint), she should have had classified status. A classified civil servant has a property right to continued employment which cannot be denied without predeprivation notice and an opportunity to be heard. Loudermill, 470 U.S. at 545-47, 105 S.Ct. at 1495-96. Because she should have been classified, Christophel claims, she had the rights of a classified civil servant at the time her position was abolished.
 
 
 27
 Implicit in Christophel's syllogism is a crucial premise, i.e., that, under Ohio law, an unclassified civil servant's contention that she should be placed in the classified service automatically bestows on her the rights which accompany classified status, and automatically imposes on defendants the duties owed to those having classified status. Ohio law, the source to which we must look to determine if a property right exists, provides no support for Christophel's claim. In Lawrence v. Edwin Shaw Hospital, 34 Ohio App.3d 137, 517 N.E.2d 984 (1986), the Ohio Court of Appeals was called upon to decide a similar issue involving plaintiffs who had been classified civil servants until they were declassified by operation of an amendment to the civil servant statute. The plaintiffs were laid off nine months later when their employment site was closed, and the defendant did not afford them the procedural protections that would have been available had they had classified status. The plaintiffs challenged their layoffs on a number of grounds, including an alleged deprivation of procedural due process. The court rejected the plaintiffs' claim that they had a protected property interest in their jobs:
 
 
 28
 Appellants' property interest was derived from the statutory protections and benefits of R.C. Chapter 124. This "property interest" only existed for as long as appellants were included under the classified civil service. Thus, at the time of the layoffs, appellants no longer had a property interest in continued public employment and, therefore, no due process rights attached.
 
 
 29
 Id. 517 N.E.2d at 988. Accord Shearer v. Cuyahoga County Hosp., 34 Ohio App.3d 59, 516 N.E.2d 1287, 1288 (1986).
 
 
 30
 If all state employers were required to treat unclassified civil servants as classified based upon the mere assertion of a claimed right to such status, Ohio's civil service system, and its carefully crafted distinctions between unclassified and classified civil servants would be rendered a nullity. Simply put, unclassified civil servants do not have the property rights of classified civil servants.
 
 
 31
 Christophel contends, however, that her ability to pursue an SPBR appeal regarding her claimed right to classified status was circumvented by the University's failure in 1991 to inform her of the ten-day limit on such appeals. Whether a federal constitutional right is implicated by this failure depends upon whether a recognized property right was affected by the University's actions. Christophel identifies such a property right in her claimed right to be a classified civil servant. There is a fundamental difference, however, between the attainment of a state-recognized status, and the mere assertion of a right to that status. In the first situation, the status is generally fixed, vested, or of a specified duration. In the second situation, the so-called right is no more than an inchoate claim, not yet adjudicated or otherwise acted upon. Until the state bestows the right or benefit, there is no property right, and nothing for the procedural protections afforded by the Due Process Clause to protect. Moreover, it is particularly appropriate for this preliminary issue to be decided by Ohio's courts or administrative tribunals.
 
 
 32
 In sum, Christophel has not demonstrated that she suffered a deprivation of a recognized property right, and, consequently, no federal due process rights attached. Under the law as it existed in 1991-92, and under the law as it exists today, there was no constitutional violation as a result of the abolishment of Christophel's unclassified position.
 
 Abolishment of Classified Position in 1992
 
 33
 When the University gave Christophel classified status as she requested, she attained a property right in her new position. The question presented, then, is whether the University gave her all the process that was due when it informed her that the classified position was being abolished. This is a question of federal constitutional law. As stated by the Supreme Court, a classified civil servant in Ohio who is entitled to pursue post-termination administrative procedures, receives all the pre-termination process that is due when she is given notice of the pending job action and an opportunity to respond, either in person or in writing. Loudermill, 470 U.S. at 546-48, 105 S.Ct. at 1495-96.
 
 
 34
 There is no question but that Christophel received the process she was due when her classified position was abolished. The University sent Christophel a letter giving her 18 days notice of the abolishment of the position; set forth the University's reason for its actions; informed her of her displacement options, and the steps required to exercise each; and informed her of her right to appeal the University's decision within 10 days after receipt of the notice letter. Christophel thus had notice of the pending job abolishment and an opportunity to respond prior to the effective date of the job abolishment.[5] She also had the ability to pursue an SPBR appeal, but elected not to file an appeal within the time period permitted by law for doing so. Her failure in no way is attributable to the University, however, because the notice of the job abolishment unambiguously explained the deadline for filing the appeal. Christophel's constitutional challenge regarding this position thus fails.
 
 
 35
 Our disposition makes it unnecessary to determine defendants' remaining claims of error. For the reasons stated, we REVERSE the court's order denying summary judgment on the basis of qualified immunity, and REMAND for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Christophel and four other University employees filed a request for investigation with the SPBR, contending that the University systematically labels employees as unclassified when they should in fact be classified, thus depriving them of the rights and benefits of classified civil service. The SPBR dismissed the investigation, holding that it had no jurisdiction to review an entire classification plan. The SPBR recommended that the Department of Administrative Services conduct an audit of the University's classifications. The record does not reflect whether an audit took place, or whether DAS ever found improprieties in the University's classification system
 
 
 [2]
 To support her claim, Christophel relies on the deposition testimony of the former director of personnel, Robert Childress, who testified candidly that the University was unsuccessful in defending a number of challenges before the SPBR in which employees claimed that they should have had classified rather than unclassified status. The problem, according to Childress, resulted from a disagreement between the DAS and the SPBR regarding the proper classification for certain types of employees. Childress and Gubser concluded that if the SPBR were likely to disagree with the University's position, the University would concede the issue and reclassify the employee as classified. This was the approach taken in Christophel's case
 
 
 [3]
 Christophel makes no claim that her right to substantive due process was violated. Any such claim would be of dubious merit. See Holthaus v. Board of Educ., 986 F.2d 1044, 1046 (6th Cir.1993); Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1351 (6th Cir.1992); Charles v. Baesler, 910 F.2d 1349 (6th Cir.1990)
 
 
 [4]
 The due process clause also protects the liberty interest involved in the loss of a government right, benefit or entitlement, coupled with a stigmatizing publication. Siegert, 500 U.S. at 233-34, 111 S.Ct. at 1794. Christophel makes no such claim in this case
 
 
 [5]
 Indeed, through counsel, Christophel sent the University a "formal response" to the job abolishment notice, stating her intent to challenge the denial of bumping rights in her classified position, and announcing her intention to file an appeal of the job abolishment. This response was sent nine days after the notice was given, within the time for filing an appeal