NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0258n.06
Filed: April 6, 2007

No. 06-3774

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| **MADELYN A. CORBETT**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| **JOHN W. GARLAND**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:     MARTIN, COLE, and GILMAN, Circuit Judges.

**R. GUY COLE, JR., Circuit Judge.**  Defendant-Appellant John W. Garland, President of

Central State University ("CSU"), brings this interlocutory appeal of the district court's grant of

partial summary judgment in favor of Plaintiff-Appellee Madelyn A. Corbett, a former employee at

CSU.  Corbett brought suit under 42 U.S.C. § 1983, alleging that Garland deprived her, without due

process, of her constitutionally protected property interest in her continued employment when he

terminated her employment at CSU.  The district court granted Corbett's motion for partial summary

judgment on the issue of liability and denied Garland's motion for summary judgment on the basis

of qualified immunity.  Garland appeals the denial of his qualified-immunity defense.  To overcome

this defense, Corbett must show that (1) Garland violated her constitutional rights, and (2) those

rights were clearly established.  We conclude that those rights were not clearly established, and

Garland is therefore entitled to qualified immunity. Accordingly, we **REVERSE** the district court's grant of summary judgment in favor of Corbett and **REMAND** with instructions to enter judgment in favor of Garland.

## I.  BACKGROUND

Crucial to this appeal is whether Corbett was a "classified" or "unclassified" employee under Ohio law when Garland terminated her employment; only if she were a classified employee would she have had a protected property interest in her continued employment. We therefore first provide some background regarding classified versus unclassified employees and then discuss the facts and procedural history of this case.

### A.      Classified Versus Unclassified Employees

Ohio Revised Code ("ORC") section 124.11 provides that Ohio's civil service "shall be divided into the unclassified service and the classified service." ORC § 124.11 (2004). There are critical differences between classified and unclassified civil servants. *Christophel v. Kukulinsky*, 61 F.3d 479, 482 (6th Cir. 1995).

Classified employees are chosen from eligibility lists and are required to demonstrate their fitness for employment through competitive examination or by providing evidence that they satisfy specific requirements. *Id.* Classified civil servants have tenure during "good behavior and efficient service," can be discharged only for cause as set forth in ORC § 124.34, and have displacement ("bumping") rights if their jobs are abolished. *Id.* A classified civil servant has the right to appeal a discharge to the State Personnel Board of Review within ten days after receipt of the notice of discharge. *Id.* (citing ORC § 124.328). Ohio's civil-service statute creates a property right in

continued employment for classified civil servants; a classified civil servant cannot be deprived of this right without due process. *Id.* (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538-39 (1985)).

Unclassified civil servants, on the other hand, are not required to satisfy the merit and fitness requirements applicable to the classified service. *Id.* Unclassified employees serve at the pleasure of the employer and have no bumping rights if their jobs are abolished. *Id.* Concomitantly, unclassified civil servants are not themselves subject to bumping or displacement when other employees are laid off, and they generally are paid more than classified civil servants. *Id.* Unclassified employees have no right to appeal their discharge to the State Personnel Board of Review. *Id.* Employees designated as unclassified may appeal only if they also assert that their designation as unclassified was improper. *Id.* Unlike classified employees, unclassified employees have no property right to continued employment. *Id.* (citing *Vodilla v. Clelland*, 836 F.2d 231, 232 (6th Cir. 1987)).

The Ohio civil-service statute divides the civil service into classified and unclassified positions by explicitly naming the unclassified positions and providing that the classified service shall comprise those civil-service positions "not specifically included in the unclassified service." ORC §§ 124.11(A), (B). With regard to public universities, the statute provides that the following employees are unclassified: "All presidents, business managers, administrative officers, superintendents, assistant superintendents, principals, deans, assistant deans, instructors, teachers, and such employees as are engaged in educational or research duties connected with the public . . . universities, as determined by the governing body of the public . . . universities." ORC

§ 124.11(A)(7)(a). Corbett's last position with CSU, senior accounts-payable clerk, was not among those listed as unclassified in the statute.

**B.    Facts**

Corbett began working at CSU on May 19, 1975, as a part-time, permanent employee in the mail room. In 1979, she became a switchboard operator at CSU, a position she held until 1986. In 1986, she moved to the accounting department as an accounts-payable clerk. When she was an accounts-payable clerk, Corbett was unaware whether she was a classified or unclassified employee, but she understood that a collective-bargaining agreement between CSU and the American Federation of State, County, and Municipal Employees, Local 361, governed the terms and conditions of her employment.

In 1998, Corbett was promoted to accounts-payable supervisor. As a condition of her promotion, Corbett signed an employment contract on April 15, 1998. She understood she was no longer a member of a collective-bargaining unit and was no longer subject to the collective-bargaining agreement. She was paid on a salary, instead of hourly, basis. The employment contract gave CSU the right to terminate her without cause on thirty days' written notice or immediately with cause. The contract was effective April 1, 1998, through June 30, 1998. It is common practice at CSU, however, for employees to continue serving under the same terms and conditions of a contract that has technically expired. The employee generally does not sign a renewal contract, but the original contract continues until further notice by mutual consent. The ending date on the contract merely reflects the end of the fiscal year (June 30 at CSU) during which the parties entered the

contract. Accordingly, although Corbett's contract recited an expiration date of June 30, 1998, none of the conditions of Corbett's employment changed after that date, and she continued to perform the same duties and receive the same pay and benefits.

In late March or early April 2004, CSU's personnel office informed Corbett that CSU was demoting her to senior accounts-payable clerk and that she needed to sign a new employment contract. CSU gave her a document entitled "Employee Action Form," which modified her prior contract, demoting her from account-clerk supervisor to senior accounts-payable clerk. Her new duties were essentially the same as those she had performed as a bargaining-unit employee, before her promotion to account-clerk supervisor. The new contract had a start date of March 19, 2004, and an end date of June 30, 2004. Although she was being demoted, the agreement specifically provided that her "salary will remain at current level." CSU therefore continued to pay her on a salary basis, unlike bargaining-unit employees, who were paid hourly. The hourly equivalent of Corbett's salary was $16.16 per hour, while the highest-paid bargaining-unit account clerk received $14.37 per hour. Like other "contract employees," she continued to be paid monthly, in contrast to the bargaining-unit employees, who were paid bi-weekly. This new contract also provided, consistent with her prior contract, that CSU could terminate the agreement on thirty days' notice or at any time for cause. Corbett consulted with her attorney before signing this agreement, and she understood all of its terms. She signed the contract on April 27, 2004, but made the following note on the bottom of the first page: "I do not agree on this move."

Corbett did not think she was a member of the bargaining unit following her demotion, nor

did anyone tell her that her employment status had changed. She later stated, however, that she did not know whether she was a member of the bargaining unit and that she did not consider herself a "contract employee." But she also admits that she completed numerous leave forms in this new position on which she stated that she was a "contract employee" and not a bargaining-unit employee. Consistent with CSU's practice, Corbett continued to work after the June 30, 2004 expiration date of the contract under the same terms as before.

On September 17, 2004, CSU Human Resources Director Mickey Hudson provided Corbett with written notice of her termination. The letter stated that she was to be discharged in thirty days, on October 17, 2004. Corbett requested to speak to President Garland, but Hudson stated that the President was not going to speak with her. Corbett then signed the termination notice, acknowledging that she received it, and wrote the following on the bottom of it: "I do not agree with this action. Nobody has heard my side."

Corbett was not required to report to work as of September 17, 2004, but she continued to receive employment benefits until October 17, 2004. At the time of Corbett's termination, Susan Ferguson was her direct supervisor. Ferguson reported to John Brothers, who in turn reported to a CSU Vice President who reported to President Garland. Between the time Corbett received her termination notice and its effective date, she made no effort to communicate with any of these individuals. Corbett has since retired from state service, and she currently receives benefits from the Public Employees Retirement System of Ohio.

**C.     Procedural History**

On January 28, 2005, Corbett sued Garland in district court under § 1983, alleging that

Garland violated the Fourteenth Amendment to the United States Constitution by depriving her, without due process, of her constitutionally protected property interest in her continued employment. Corbett sought a variety of remedies, including compensatory damages, punitive damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs. *Corbett v. Garland*, No. C-3-05-037, 2006 U.S. Dist. LEXIS 29395, at *2 (S.D. Ohio May 15, 2006). Corbett moved for summary judgment on the issue of liability only. *Id.* at *11. Garland cross-moved for summary judgment, arguing that (1) Corbett was not entitled to due process, and (2) even if she were entitled to due process, Garland was entitled to qualified immunity. *Id.* The district court granted Corbett's motion for summary judgment and denied Garland's motion, concluding that Garland improperly denied Corbett due process and that Garland was not entitled to qualified immunity. *Id.* at *15-33. This left only the issue of damages to be adjudicated. *Id.* at *33. Garland challenges the district court's ruling through this interlocutory appeal. We have jurisdiction under the collateral-order doctrine. *See Will v. Hallock*, 546 U.S. 345, __, 126 S. Ct. 952, 958 (2006) (noting that orders rejecting qualified immunity fall into the "small class" of collaterally appealable orders) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

## II. DISCUSSION

### A. Standard of Review

This Court reviews de novo a district court's grant of summary judgment. *Miller v. Admin. Office of the Courts*, 448 F.3d 887, 893 (6th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Whether qualified immunity applies is a question of law that this Court reviews de novo. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Sanderfer v. Nichols*, 62 F.3d 151, 153 (6th Cir. 1995)).

**B.     Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known. *Id.* (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once the official raises the qualified-immunity defense, the burden is on the plaintiff to demonstrate that the official is not entitled to qualified immunity. *Id.* (citing *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir. 2004)). To meet this burden, the plaintiff must show that (1) the facts alleged, taken in the light most favorable to the plaintiff, establish that the officer's conduct violated a constitutional right, and (2) the right was clearly established. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Supreme Court since *Saucier* has continued to use this two-step approach to qualified immunity, but this Court sometimes employs a third step: assessing whether the official's conduct was "objectively unreasonable in light of the clearly established constitutional rights." *Miller*, 448 F.3d at 893 (quoting *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 901 (6th Cir. 2004)).

1.     Violation of a Constitutional Right

The first prong of the qualified-immunity analysis asks whether a constitutional violation occurred. *Silberstein*, 440 F.3d at 311 (citing *Saucier*, 533 U.S. at 201). Corbett alleges that Garland violated her Fourteenth Amendment right to due process. To determine whether this violation occurred, we assess (a) whether Corbett had a property interest that entitled her to due-process protection, and, if so, (b) what process was due. *Id.* (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).

Property interests do not derive from the Constitution; they are created and defined by existing rules or understandings that stem from independent sources, such as state law. *Id.* (citing *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972)). The Supreme Court has recognized that when a state statute provides that "classified" civil-service employees may be dismissed only for cause, the statute creates a property interest in that employment that the Fourteenth Amendment protects. *Id.* (citing *Loudermill,* 470 U.S. at 541 (interpreting ORC § 124.11)). When, however, an employee is "unclassified" and can be discharged without cause, she has no protected property interest. *Christophel*, 61 F.3d at 482.

Although state law defines the existence of a property interest, the federal Constitution defines the process that one must follow to deprive an individual of that property interest. *Silberstein*, 440 F.3d at 315 (citing *Loudermill*, 470 U.S. at 541). For a public employee with a property interest in continued employment, due process includes "a pretermination opportunity to respond, coupled with post-termination administrative procedures." *Id.* (quoting *Loudermill*, 470 U.S. at 547-48). The "root requirement" of the Due Process Clause requires that "an individual be given the opportunity for a hearing *before* he or she is deprived of any significant property interest."

*Id.* (citing *Loudermill*, 470 U.S. at 542). "The Supreme Court and this Court have specified that the pre-termination hearing's essential ingredients are oral or written notice, an explanation of the employer's evidence, and an opportunity for an employee to present his side of the story." *Brickner v. Voinovich*, 977 F.2d 235, 237 (6th Cir. 1992).

Corbett argues that her last position with CSU, senior accounts-payable clerk, was classified because it is not listed among the unclassified positions in Ohio's civil-service statute. Garland essentially concedes that someone in her position generally would be classified: "It is uncontroverted in this action that, based on her duties alone, Corbett fell within the classified civil service under ORC § 124.11." Garland contends, however, that Corbett's at-will employment contract and receipt of benefits under that contract negated what otherwise would have been her classified status.

The district court concluded that Corbett was classified for three reasons: (i) the contract expired before Garland terminated Corbett's employment; (ii) the contract, even if in effect, did not take away Corbett's status as a classified employee under the statute; and (iii) Corbett's receipt of benefits under the contract's terms does not estop her from asserting classified status.

The district court's first basis to conclude that Corbett is classified—that the contract was no longer in effect when Garland terminated Corbett's employment—is erroneous. "Where a contract of employment for a definite time is made and the employee's services are continued after the expiration of the time, without objection, the inference is that the parties have assented to another contract for a term of the same length with the same salary and conditions of service . . . ." *Ojalvo v. Bd. of Trustees*, No. 88AP-773, 1989 Ohio App. LEXIS 3548, at *11 (Ohio Ct. App. Sept. 14, 1989) (quoting 1 Williston, Contracts, § 90 (rev. ed. 1936); citing *Kelly v. Carthage Wheel Co.*, 57

- 10 -

N.E. 984 (Ohio 1900)). The presumption that the employee's service continues under the terms of the expired contract is "rebuttable by proof that a new contract for the continued period has been entered into, or by facts and circumstances showing that the parties did not intend to continue upon the terms and conditions of the original contract." *Id.* (citation omitted). Corbett's contract had an end date of June 30, 2004—the end of CSU's fiscal year. Consistent with CSU's practice, Corbett continued to work after this expiration date under the same terms as before. The district court concluded, however, that Corbett was not under the contract because Garland did not present evidence that Corbett viewed the contract as continuing. *Corbett*, 2006 U.S. Dist. LEXIS 29395, at *19. But CSU continued to provide Corbett the same salary and benefits after June 30, 2004. In short, there is no evidence "that the parties did not intend to continue upon the terms and conditions of the original contract." *Ojalvo*, 1989 Ohio App. LEXIS 3548, at *11; *see also Tucker v. Univ. of Cincinnati*, No. C-820562, 1983 Ohio App. LEXIS 11792, at *6 (Ohio Ct. App. June 29, 1983) ("We . . . conclude that the expiration of the contract eighty-four days before appellant['s] dismissal did not effect a change in his unclassified status."). Thus, the contract was in effect.

Having established that the contract was in effect, we assume, without deciding, that Corbett was nonetheless classified and entitled to assert that status. Further, we assume Garland violated her due-process rights when terminating her employment. As discussed below, however, even under these assumptions, Garland is entitled to qualified immunity.

2. Clearly Established Right

To overcome Garland's assertion of qualified immunity, Corbett must show that "it would have been clear to a reasonable person in [Garland's] position that [his] conduct was unlawful." *See Silberstein*, 440 F.3d at 316 (citing *Saucier*, 533 U.S. at 201). When assessing whether Corbett's constitutional rights were "clearly established," this Court must do so in light of the specific context of the case, not as a broad general proposition. *See id.* (citing *Saucier*, 533 U.S. at 201). Here, there is a strong argument that waiver or estoppel bars Corbett's claim of classified status; it would not be unreasonable for a person in Garland's position to believe that was the case.

A waiver is a voluntary relinquishment of a known right. *Chubb v. Ohio Bureau of Workers' Comp.*, 690 N.E.2d 1267, 1269 (Ohio 1998) (citations omitted). Although waiver is similar to estoppel, estoppel is a separate and distinct doctrine. *Id.* at 1270. With estoppel, a party need not intend to relinquish a right. *Id.* Equitable estoppel prevents relief when one party induces another to believe certain facts exist and then the other party changes her position in reasonable reliance on those facts to her detriment. *Id.* Thus, estoppel involves the conduct of both parties, whereas waiver depends upon what only one intends to do. *Id.*

In *Chubb*, the Ohio Supreme Court held that these defenses barred a state employee from asserting classified status. *Id.* at 1270. The employee started as a classified employee and was promoted to an unclassified position. *Id.* at 1267-68. Then, to resolve a disciplinary charge against her, she entered a contract that changed her work assignment but explicitly provided that the position would still "be in the unclassified service (as is her current position) . . . ." *Id.* at 1268. Approximately one year later, the defendant employer terminated her without cause. *Id.* The employee appealed this termination to the State Personnel Board of Review, which dismissed the

appeal because she was not classified. *Id.* The employee appealed to a state trial court, arguing that she was entitled to an opportunity to show that she was classified. *Id.* The trial court reversed and remanded the case to the Board of Review with instructions to determine whether the employee's actual job duties rendered her classified or unclassified. *Id.* In doing so, the court rejected the defendant's argument that the employee should be estopped from claiming classified status because she knew she was unclassified and had reaped the benefits of the unclassified position. *Id.* An appellate court affirmed the trial court's remand but reversed on the estoppel question, holding that the defendant could raise estoppel as a defense. *Id.*

The Ohio Supreme Court affirmed, holding that when a terminated public employee claims classified status, "the state may assert defenses of waiver and estoppel if the employee has accepted appointment to a position designated as unclassified and also has accepted the benefits of that unclassified position." *Id.* at 1269. The court explained that, "[i]f the employee knowingly and voluntarily accepted appointment to an unclassified position and reaped other benefits such as higher wages, the employee has voluntarily relinquished the statutory rights and protections of civil service status." *Id.* Further, "[n]othing in the statutory scheme of civil service precludes the use of the defenses of waiver and estoppel in an appeal by a public employee." *Id.* at 1270. The court also clarified that if the employee has accepted appointment to a position designated as unclassified, the state is entitled to assert waiver and estoppel defenses "*regardless of whether the employee's actual job duties fall within the classified status.*" *Id.* at 1269 (emphasis added).

The district court rejected Garland's argument that *Chubb* bars Corbett's claim because Garland had "not shown that CSU *designated* [Corbett's final position of] senior accounts payable

clerk as unclassified *in accordance with Ohio law*." *Corbett*, 2006 U.S. Dist. LEXIS 29395, at *18-19 (emphasis added). In this way, the district court apparently read *Chubb* to allow waiver and estoppel defenses only when the employer makes the sort of designations *specifically authorized by statute*, such as that described in *Klaiman v. Ohio State University*, No. 03AP-683, 2004 Ohio App. LEXIS 971, *12 (Ohio Ct. App. Mar. 11, 2004)*, where the university employer properly contracted to make an employee's position unclassified via ORC § 124.11(A)(7)(a), which "vests a certain amount of discretion in the [university employer] to *designate* certain employees . . . as unclassified employees." *Id.* at *8 (emphasis added).

But in the waiver-and-estoppel context, whether an employer has "designated" a position as unclassified must include situations in which the employer informs the employee that it views the position as unclassified, *even if the position is classified under the statute.* If the position were actually unclassified by statutory designation, there would be no need to raise waiver or estoppel: the employee would undeniably be unclassified. *See Chubb*, 690 N.E.2d at 1270 ("If the employee's actual job duties fall within unclassified status, then there would be no need to argue waiver or estoppel . . . ."); *Cf. Wallis v. City of Gallipolis*, No. 00-Ca-01, 2000 Ohio App. LEXIS 5738, at *6-7 (Ohio Ct. App. Dec. 4, 2000) ("In an appeal pursuant to [ORC §] 124.34 brought by a public employee, the employer may assert the defenses of waiver and estoppel of classified status, *even if the employee's duties fall within the classified status.*" (emphasis added)). The question then, is whether it was unreasonable for Garland to believe that Corbett was estopped from asserting classified status. We conclude it was not.

To be sure, viewing the facts in Corbett's favor (as we must at this stage), there is evidence

that Corbett did not relinquish classified rights. For example, the form for Corbett's contract was not explicitly limited to unclassified positions—it could be used for both classified and unclassified employees. Additionally, CSU demoted Corbett to a position that it concedes would be classified, were one to consider solely the duties of the position.

On the other hand, there is substantial undisputed evidence to indicate that Corbett knew CSU intended to continue—and she acceded to—unclassified status when she entered the contract demoting her. Corbett concedes that her penultimate position as account-clerk supervisor, under an at-will contract similar to that governing her last position, was unclassified even though it is not listed in ORC § 124.11 among the unclassified positions. And she concedes that she reviewed the terms of the latter contract with her attorney and fully understood them. Indeed, if she believed she were a classified employee, she almost certainly would not have agreed to an at-will contract, which would be entirely at odds with the procedural protections of classified service. Moreover, CSU continued to pay her on a salary basis at a rate greater than any other hourly employee in a similar position. In this way, it appears she knowingly and voluntarily accepted the benefits of this position while relinquishing the rights inherent in the lower-paid, classified status.

Under these undisputed facts, it would not be clear to a reasonable person in Garland's position that Corbett could overcome the defenses of waiver and estoppel. *Silberstein,* which illustrates the qualified-immunity analysis in the context of a discharged, allegedly classified, employee, supports this conclusion. There, we held that the state employer was not entitled to qualified immunity. *Silberstein*, 440 F.3d at 316. The state defendants, like Garland, did not dispute that a classified employee "had a clearly established right to a pre-termination hearing at the time

of [the employee's] termination; rather, they argue[d] that [the employee's] *status as a classified employee* [was] disputable such that a reasonable person would not know that he or she was violating [the employee's] rights." *Id.* (emphasis added). We held, however, that because the applicable city charter explicitly established that the employee was classified, "[n]o reasonable official reading the plain language of the Charter would reach the conclusion that [the employee] was an unclassified employee." *Id.* Moreover, "numerous facts on the record," including the employer's own treatment of the employee's position, "demonstrate[d] that [her] position was generally understood to be classified." *Id.* at 317. We therefore rejected the defendant's qualified-immunity defense.

Corbett suggests that her classified status, like that of the employee in *Silberstein,* cannot reasonably be disputed. Viewing the Ohio civil-service statute here as analogous to the city charter in *Silberstein*, Corbett suggests that she is in the "exact situation" as there and that therefore she is classified. But that position ignores Corbett's *at-will* contract and her receipt of benefits under it. There was no contract in *Silberstein*, let alone one that was, like Corbett's, plainly incompatible with classified status. As the discussion above regarding *Chubb* shows, although Corbett is classified under the statute, Garland has a compelling waiver-and-estoppel argument based on Corbett's apparent acceptance of continuing unclassified status and the benefits that come with it. In contrast to *Silberstein*, where many facts "demonstrate[d] that [the employee's] position was generally understood to be classified," many of the facts here (for example, accepting a higher salary and acceding to an at-will provision that governed a prior unclassified position) demonstrate that Corbett's position was "generally understood" (rightly or wrongly) to be unclassified. In light of these facts, it would not be clear to Garland that by discharging Corbett he would be violating her

due-process rights. *Cf. Miller*, 448 F.3d at 897 (holding that state officials were entitled to qualified immunity where their statements indicated that discharged employee was tenured, but where their policies and advisors indicated to the contrary).

This Court has explained that as the qualified-immunity defense has evolved, it "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Garland's conduct does not put him in these categories. Thus, he is entitled to qualified immunity.

### III. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's order granting Corbett summary judgment and **REMAND** with instructions to enter summary judgment in favor of Garland.