*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0222p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

EDWARD KIZER; JOHN RYAN, III; DON HOWELL,

　　　　　　　　　*Plaintiffs-Appellants,*

　　　　　*v.*

SHELBY COUNTY GOVERNMENT; SHELBY COUNTY CIVIL SERVICE MERIT BOARD; OTIS JACKSON, Individually and in his official capacity; JOE FORD, in his official capacity,
　　　　　　　　　*Defendants-Appellees.*

No. 10-5161

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 08-02570—Samuel H. Mays, Jr., District Judge.

Argued: June 3, 2011

Decided and Filed: August 17, 2011

Before: BOGGS and SILER, Circuit Judges; VAN TATENHOVE, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Alan G. Crone, CRONE & McEVOY, PLC, Memphis, Tennessee, for Appellants. Charles W. Cavagnaro, Jr., EVANS PETREE, PC, Memphis, Tennessee, Louis P. Britt III, FORD & HARRISON LLP, Memphis, Tennessee, for Appellees. **ON BRIEF:** Alan G. Crone, CRONE & McEVOY, PLC, Memphis, Tennessee, for Appellants. Charles W. Cavagnaro, Jr., EVANS PETREE, PC, Memphis, Tennessee, Louis P. Britt III, Marcy N. Ingram, FORD & HARRISON LLP, Memphis, Tennessee, for Appellees.

---

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

———————————

**OPINION**

———————————

VAN TATENHOVE, District Judge.  Following their termination from appointed positions within the Shelby County Clerk's Office, Edward A. Kizer, John J. Ryan, III, and Don Howell brought suit under 42 U.S.C. § 1983.  They allege that they were terminated without due process of law, in violation of the Fourteenth Amendment.  The district court granted summary judgment in favor of the County and its officials, concluding that Kizer, Ryan, and Howell received constitutionally adequate process prior to their termination.  On appeal, the three former employees challenge that conclusion.  We agree that the County and its officials were entitled to summary judgment, but so hold because the Appellants had no legitimate property right to their positions and therefore nothing for the Due Process Clause to protect.

**I.**

In 1971, the Tennessee General Assembly enacted Chapter 110 of the Tennessee Private Acts (the "Act"), establishing the Tennessee Civil Service Merit System for employees of Shelby County, Tennessee.[1]  The Act established Defendant Shelby County Civil Service Merit Board (the "Board") as the body charged with determining how each available county job should be classified under the Merit System.  If the Board determines that a position is "classified," the Act requires that civil service protections apply to that position.  Shelby County must fill classified positions through open, competitive evaluations after advertising the job openings for thirty days.  Classified employees are not terminable at will.

Not all positions within Shelby County Government qualify for protection under the Act.  The Board has determined that some positions are "unclassified."  Unclassified positions are commonly known as appointed positions.  Shelby County's forty-three

———————————

[1]We have adopted, in large measure, the district court's thorough recitation of the undisputed facts in this case.

elected officials appoint people they choose to fill the unclassified positions. Unclassified positions do not require prior public notice or examination before the appointing officials may fill them. Because unclassified positions do not come within the Act's civil service protections, the employees in those positions are terminable at will. Shelby County employees commonly refer to the termination of an unclassified employee as "disappointment." If a disappointed employee held a classified position before his or her appointment to an unclassified post, the employee may exercise "bump-back" rights to return to the protected civil service position following the disappointment.

Former Shelby County General Sessions Court Clerk Chris Turner appointed Edward Kizer Administrator of the Clerk's Office on February 1, 2003. The Board categorized Kizer's position as unclassified, and Kizer did not obtain his position as Administrator through the merit selection process. Kizer's job responsibilities included supervising forty-five employees; reviewing reports, including financial reports; and resolving any problems with the Clerk's Office that judges, lawyers, or citizens might have. Kizer was also responsible for the day-to-day operations of the Clerk's Office and held weekly meetings with lower-level managers to ensure that staff productivity met Turner's stated goals.

John J. Ryan, III began working for the Clerk's Office nearly thirty years ago. Although Ryan was initially a classified employee protected by the Act, in 1987 Ryan accepted an appointment to an unclassified position, "Manager B." Ryan worked as Manager B for approximately twenty-one years because successive Clerks reappointed him. Manager B's primary responsibility was to run the 24-hour division of the criminal section of the Clerk's Office. Ryan supervised three shifts of eight workers each and was on call twenty-four hours a day to address any issues that a supervisor could not handle. Under Turner, Ryan also managed the Clerk's Office collections department. In Ryan's words, his job was to "put out fires" that might arise from disputes involving bail-bonding companies or judges.

Don Howell joined the General Sessions Clerk's Office when Turner appointed him to serve as "Manager A" in September 1996. As with Kizer's and Ryan's positions, the Board categorized Manager A as an unclassified job. Howell replaced the prior Manager A, Camille Hubbard, whom Turner terminated after his election as Clerk. Turner had Howell examine the Clerk's Office fee structure and make recommendations about how the office could become self-sustaining. Howell also made budgetary recommendations and worked with a state committee in Nashville to revive Tennessee's court cost statutes. If Turner had special projects, he often assigned them to Howell.

On August 8, 2008, Defendant Otis Jackson, Jr. defeated incumbent Turner in the general election for Shelby County General Sessions Court Clerk. Four days after his defeat, Turner, following established procedure, contacted Shelby County Human Resources Administrator Mike Lewis. Turner asked Lewis to perform a review of Plaintiffs' jobs and to recommend that the Board change their categorization from unclassified to classified. Lewis asked Timothy Green to review preliminarily the status of Appellants' positions. In performing his review, Green examined only the job descriptions on file with the Clerk's Office. Based on his review of the job descriptions, Green preliminarily recommended, on August 14 or 15, that the Board consider changing Ryan's and Howell's job categorization to classified. Green did not recommend that Kizer's classification change.

Lewis wrote to Turner on August 25, requesting that Turner identify either (1) material changes in Appellants' job responsibilities that would support their reclassification or (2) errors the Board had made in its original categorization of the positions as unclassified. Turner responded by letter two days later. Although he did not answer either of the two questions Lewis posed, Turner did argue that positions in other offices had recently been re-categorized as classified. He also asked why Lewis's review was taking so long.

Before assuming office on September 1, Clerk-Elect Jackson met with Shelby County officials to obtain a list of all unclassified positions. After that meeting, Jackson informed Kizer and Howell by letters dated August 26, that he would not reappoint them

to their positions. Kizer and Howell both chose to retire from Shelby County Government and receive the benefits due them for their years of service. After assuming office, Jackson withdrew the pending request to re-categorize Appellants' positions as classified. Jackson then informed Ryan by letter dated September 10, that he would not be reappointed to his position as Manager B. Ryan, exercising his bump-back rights, returned to his prior classified position of Chief Principal Court Clerk. Ryan has since received a promotion through the merit selection system to Community Service Organizer.

Kizer filed suit on August 29, to contest his termination, and Ryan and Howell later joined as Co-Plaintiffs. They alleged that the Appellees deprived them of their jobs without due process of law through a policy of mislabeling positions as unclassified that should have been labeled classified, thereby removing the procedural protections of the Act. The district court partially granted Appellees' Motion to Dismiss, dismissing claims against former Shelby County Mayor A. C. Wharton in his individual capacity. The court also dismissed Appellants' claims based on alleged violations of the Tennessee Constitution and claims for punitive damages against Shelby County, the Board, and Wharton. In a subsequent order, the court denied Appellants' Motion for Class Certification.

The remaining claims at that time were the Appellants' individual claims against Shelby County, the Board, Joe Ford in his official capacity as Shelby County Mayor[2], and Jackson in his official capacity as General Sessions Court Clerk for dismissing Kizer, Ryan, and Howell without due process of law. They also sought declaratory and injunctive relief and presented a claim for punitive damages against Jackson in his individual capacity. Both sides filed motions for summary judgment. The district court granted summary judgment in favor of the Appellees on all of the remaining claims. The former employees timely appealed.

---

[2]Pursuant to Fed. R. Civ. P. 25(d), the district court substituted Joe Ford, who was appointed by the Shelby County Commission to serve the remainder of Mayor Wharton's term, for Wharton who resigned that post following his election as Mayor of the City of Memphis, Tennessee.

## II.

### A.

The district court granted summary judgment in favor of the Defendants-Appellees, premising its decision on the ground that the former employees were afforded due process prior to their termination. We review that decision de novo. *See Grubb & Ellis/Centennial, Inc. v. Gaedeke Holdings, Ltd.*, 401 F.3d 770, 773 (6th Cir. 2005). And that standard requires us to ask and answer the same questions considered by the district court: Whether "there is no genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In addressing these questions, this court must give the Plaintiffs-Appellants, as the non-moving party here, the benefit of all factual inferences.

### B.

On appeal, Kizer, Ryan, and Howell argue that the district court erred by making a factual determination not supported by the record before it. Specifically, they take issue with the district court's conclusion that minimum due process was provided because they received a pre-termination opportunity to address the reason for the termination but did not take the opportunity to do so. They maintain that they had no meaningful opportunity to challenge their classification or termination.

But, in order to determine whether there was a due process violation, it is first necessary to ask whether the former employees have demonstrated that they were deprived of a property right. Although the district court concluded that the Due Process Clause would apply if the Appellants were correct that under the statute they should have been categorized as classified employees, Kizer, Ryan, and Howell failed to satisfy this first prong–establishing that they were deprived of a property right.[3]

---

[3] Of course, "[t]his court can affirm a grant of summary judgment on a ground presented to the district court if the opposing party has had a chance to respond." *Fox v. Van Oosterum*, 176 F.3d 342, 352-53 (6th Cir. 1999) (citation omitted). *See also Sigley v. City of Parma Heights*, 437 F.3d 527, 536 (6th Cir. 2006); *Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005). Because the Appellees raised this argument in their motion for summary judgment and the Appellants had an opportunity to respond and did so, it can serve as an appropriate basis on which to affirm.

The Due Process Clause of the Fourteenth Amendment prohibits the state from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV. But, "[p]roperty interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Where a state civil service system categorizes public employees as classified—that is, not subject to removal at will—employees have a state-law-created, constitutionally protectable property interest in maintaining their current employment. *Id.* at 538-39. Conversely, unclassified employees have no property right in maintaining their jobs; and the State may terminate them summarily. *See id.* at 538-40; *Roth*, 408 U.S. at 578 (no constitutionally protected property interest in reappointment to a non-tenured position at state university); *Averitt v. Cloon*, 796 F.2d 195, 200 (6th Cir. 1986) (no constitutionally protected interest in maintaining a political appointment); *Corbett v. Garland*, 228 F. App'x 525, 527 (6th Cir. 2007) ("Unlike classified employees, unclassified employees have no property right to continued employment.") (citation omitted)).

Here, it is undisputed that Kizer, Ryan, and Howell were all hired as unclassified employees. From the time of the Appellants' appointment until their termination, the Board categorized their positions as unclassified, and therefore unprotected, under the terms of the Act. The Board had determined that these positions were unclassified because they involved sensitive policy-making duties as set forth in Section 9(7)(a) of the Merit Act. And the Appellants accepted their appointments knowing this. Consequently, as employees in unclassified positions, the Appellants have no constitutionally protected right to a hearing on their classification because the Merit Act does not cover them.

Nonetheless, the Appellants attempt to avoid this inevitable result by claiming that their categorization (as unclassified employees) was incorrect under the terms of the Act and Tennessee caselaw. They suggest that Lewis and the Board employed a "policy

of inactivity" designed to prevent employees improperly designated as unclassified from seeking review of their classification. This argument is unavailing.

First, it must be noted that the Appellants served in these positions for years (Kizer for five, Ryan for twenty-one, and Howell for twelve) without making a single request to have the status of their positions altered in any way. The record is also devoid of any attempt by the Appellants to initiate a change in their job classification with the Board or a supervisor. In fact, this issue came up for the first time only after Turner, the man who appointed all three Appellants, lost the election and was on the way out of office. At that point, he initiated a request to have eighteen of his nineteen prior appointments recategorized to classified status.

Second, and more importantly, this court has previously rejected a similar argument in the context of the Ohio civil service system. *See Christophel v. Kukulinsky*, 61 F.3d 479, 486 (6th Cir. 1995). In *Christophel*, the plaintiff claimed that although she was hired as an unclassified civil servant, she should have had classified status. Christophel alleged that her former employer, a state university, systematically labeled employees as unclassified when they should have been given classified status. *Id.* The defendants moved for summary judgment, claiming that they were entitled to qualified immunity because they had not violated a clearly established constitutional right to due process. *Id.* at 484. The district court, however, denied that motion after concluding that genuine issues of material fact remained about whether the University had a system of misclassifying employees. *Id.* According to the district court, if Christophel were correct in her assertion that she was misclassified as an unclassified civil servant in violation of Ohio law, the defendants would have been acting outside their discretion regarding that classification and would not be entitled to the protection of qualified immunity. *Id.*

On appeal, we rejected Christophel's claim that because her position should have been classified, she was entitled to the due process rights of a classified civil servant at the time her position was abolished. *Id.* at 486. "Implicit in Christophel's syllogism," this court noted, "is a crucial premise, i.e., that, under Ohio law, an unclassified civil

servant's contention that she *should be* placed in the classified service automatically bestows on her the rights which accompany classified status, and automatically imposes on the defendants the duties owed to those having classified status." *Id.* (emphasis added). Finding no support in Ohio law for Christophel's argument, this court emphasized the "fundamental difference" between "the attainment of a state-recognized status, and the mere assertion of a right to that status." *Id.* The *Christophel* court concluded that "[u]ntil the state bestows the right or benefit, there is no property right, and nothing for the procedural protections afforded by the Due Process Clause to protect." *Id.*

The facts of this case require the same result. The Appellants were hired as unclassified civil servants. They were not subject to the merit selection requirements, acceded to their status as unclassified employees, and enjoyed the benefits associated therewith. The Appellants now claim, like Christophel did, that their positions have been miscategorized all along. Their claim boils down to this: they were entitled to the due process protections afforded to classified employees because they should have been categorized as classified employees. But this amounts to nothing more than an "asserted" right to classified status. And, just like in *Christophel*, this "so-called right is no more than an inchoate claim, not yet adjudicated or otherwise acted upon." *Id.*

In other words, asserting a right to a certain classification does not make it so. If simply claiming to be entitled to classified status could trigger the due process rights attendant to that actual classification, the distinction between classified and unclassified employees would be meaningless. Any unclassified or appointed employee claiming that his position was miscategorized could demand, and the County government would be required to provide, due process to people hired or appointed as at-will employees. Such a result defies logic and finds no support in Tennessee law. Because the Appellants were not hired pursuant to the procedures bestowing classified status upon an employee, they failed to show that they have a constitutionally protected property interest in their employment. And, without a legitimate property interest, the Due Process Clause offers no procedural protections to these former employees. It follows

*a fortiori* that the Appellants' remaining claims against Otis Jackson, Jr. were also properly dismissed.

### III.

For the reasons stated above, we affirm the district court's grant of summary judgment in favor of the Defendants-Appellees.